**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JOHN KARCZEWSKI,
   *Plaintiff-Appellant*,

v.

DCH MISSION VALLEY LLC, a
California Limited Liability
Company,
   *Defendant-Appellee.*

No. 15-55633

D.C. No.
3:14-cv-02639-
BAS-BLM

OPINION

Appeal from the United States District Court
for the Southern District of California
Cynthia A. Bashant, District Judge, Presiding

Argued and Submitted February 9, 2017
Pasadena, California

Filed July 10, 2017

Before: Susan P. Graber, Jay S. Bybee,
and Morgan Christen, Circuit Judges.

Opinion by Judge Graber;
Concurrence by Judge Bybee, *dubitante*

## SUMMARY[*]

### Americans with Disabilities Act

The panel reversed the district court's dismissal of a claim that the defendant automobile dealership violated Title III of the Americans with Disabilities Act by refusing to install temporary vehicle hand controls for test-drives of a car offered for sale.

The panel held that the plaintiff stated a claim under 42 U.S.C. § 12182(b)(2)(A)(ii), which requires a public accommodation to "make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford . . . goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities."

The panel held that the plaintiff did not state a claim under § 12182(b)(2)(A)(iv), which requires the removal of architectural barriers in existing facilities, because the "barrier" that the plaintiff encountered could not reasonably be described as an architectural barrier in an existing facility. The barrier was the lack of hand controls in the defendant's cars, and the cars that the defendant offered for sale were goods, not facilities.

The panel held that two implementing regulations, 28 C.F.R. §§ 36.307(a) and 36.306, did not preclude the plaintiff's statutory claim.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Acquiescing *dubitante*, Judge Bybee wrote that he would hold that 28 C.F.R. § 36.304(b)(21), enforcing the architectural barriers provision of the ADA and requiring the installation of vehicle hand controls, is not a permissible construction of the statute. Judge Bybee objected to the majority's analysis of § 12182(b)(2)(A)(ii) because it enabled anything to be construed as a policy and because the Department of Justice's regulations and manuals had taken a more modest approach to the terms "policies, practices, and procedures."

## COUNSEL

Russell Clive Handy (argued), Center for Disability Access, San Diego, California, for Plaintiff-Appellant.

Lann G. McIntyre (argued), Jonna D. Lothyan, Ryan P. Garchie, and Jeffry A. Miller, Lewis Brisbois Bisgaard & Smith LLP, San Diego, California, for Defendant-Appellee.

Felicia Ruth Reid (argued), Hirschfeld Kraemer LLP, San Francisco, California, for Amici Curiae National Automobile Dealers Association, California New Car Dealers Association, and National Mobility Equipment Dealers Association.

Christopher C. Wang and Sharon M. McGowan, Attorneys; Vanita Gupta, Principal Deputy Assistant Attorney General; Appellate Section, Civil Rights Division, United States Department of Justice, Washington, D.C.; for Amicus Curiae United States.

**OPINION**

GRABER, Circuit Judge:

Plaintiff John Karczewski, who is paralyzed from the waist down, sought to test-drive one of the cars offered for sale by Defendant DCH Mission Valley LLC. He requested that Defendant temporarily install hand controls so that he could test-drive the car, but Defendant declined. Plaintiff then brought this action, alleging that Defendant's refusal to install temporary vehicle hand controls violated the Americans with Disabilities Act ("ADA"). The district court granted Defendant's motion to dismiss, Fed. R. Civ. P. 12(b)(6), holding that, as a matter of law, a plaintiff may not bring a claim under the ADA requiring a public accommodation to install vehicle hand controls for test-drives, no matter the circumstances.

Reviewing de novo, *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1240 (9th Cir. 2013), and resolving a split among district courts in our circuit, we reverse and remand. Accepting the allegations in the complaint as true, as we must, *id.* at 1247, Plaintiff has stated a claim under 42 U.S.C. § 12182(b)(2)(A)(ii), which requires a public accommodation to "make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities."

FACTUAL AND PROCEDURAL HISTORY

Plaintiff "is a level T10/11 paraplegic who is paralyzed from the waist down, cannot walk, and . . . uses a wheelchair for mobility." "He drives a specially equipped vehicle with

hand controls," and he "has a disabled persons placard . . . [and] a driver's license." Defendant is "a facility open to the public . . . and a business establishment" that sells cars. Defendant permits potential buyers "the opportunity to test drive vehicles that they are considering buying."

Plaintiff visited Defendant's business with the intention of buying a used car. He asked Defendant's employees "for the opportunity to test drive a vehicle and informed them that he could not use his legs and, therefore, needed to have vehicle hand controls temporarily installed on the vehicle so that he could avail himself of this opportunity." The employees told Plaintiff that Defendant "does not install vehicle hand controls on any vehicles for sale and that they would not do so for him as an accommodation."

Plaintiff alleges that "[t]here are numerous companies that sell (and will install) vehicle hand controls that are universal in design, meaning that they can be used on any vehicle, and their installation does not render any safety features inoperable or cause any permanent modification or damage to the vehicle itself." "Such hand controls are inexpensive, are widely used within the car rental agency world for temporary installation and removal, and could be easily installed by [Defendant] without much difficulty or expense."

Following Defendant's refusal to facilitate a test-drive, Plaintiff brought this action, alleging that Defendant's failure to install temporary vehicle hand controls violated the ADA.[1]

---

[1] Plaintiff also alleged violations of state law. The district court dismissed those claims on the ground that they "are predicated on the viability of his ADA claim." Because we reverse the dismissal of the ADA claim, we also reverse the dismissal of the state-law claims.

In particular, Plaintiff alleges that Defendant discriminated by reason of:

> a.    A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

> b.    A failure to remove architectural barriers where such removal is readily achievable.    42 U.S.C. § 12182(b)(2)(A)(iv). . . .

> . . . .

> Among the barrier removal tasks that are readily achievable to accomplish is installing vehicle hand controls.    28 C.F.R. § 36.304(b)(21).

The district court dismissed the claim, holding that it was foreclosed by 28 C.F.R. § 36.307(a), which states that "[t]his part does not require a public accommodation to alter its inventory to include accessible or special goods that are designed for, or facilitate use by, individuals with disabilities."  Plaintiff timely appeals.

District courts have divided on the legal question presented in this appeal:  whether a person seeking to test-

drive a car may bring a claim under the ADA to require an automobile dealership to install temporary vehicle hand controls, at least in some circumstances, or whether such claims necessarily fail. *Compare, e.g.*, *Tate v. Deoca*, No. cv14-08738SJO(MRWx), 2015 WL 12552042 (C.D. Cal. June 30, 2015) (dismissing a claim similar to Plaintiff's claim), *and Schutza v. FRN of San Diego, LLC*, No. 14cv628JM(RBB), 2015 WL 2152207 (S.D. Cal. May 7, 2015) (same); *with Funches v. Barra*, No. 14civ.7382(KPF), 2016 WL 2939165 (S.D.N.Y. May 17, 2016) (denying a motion to dismiss a similar claim), *and Schutza v. CarMax Auto Superstores Cal., LLC*, No. 14cv2617L(JLB), 2015 WL 1632716 (S.D. Cal. Apr. 13, 2015) (same). We received two helpful briefs from amici: a brief from the United States, in support of Plaintiff's position; and a brief from the National Automobile Dealers Association, the California New Car Dealers Association, and the National Mobility Equipment Dealers Association, in support of Defendant's position.

## DISCUSSION

"Title III of the ADA prohibits discrimination by public accommodations . . . ." *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 669 (9th Cir. 2010) (citing 42 U.S.C. § 12182(a)). "Public accommodations must start by considering how their facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience." *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012). Section 12182 begins with a "General rule" in subsection (a):

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services,

facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). More specifically:

For purposes of subsection (a) of this section, discrimination includes—

. . . .

(ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

. . . .

(iv) a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, and transportation barriers in existing vehicles and rail passenger cars used by an establishment for transporting individuals (not including barriers that can only be removed through the

retrofitting of vehicles or rail passenger cars by the installation of a hydraulic or other lift), where such removal is readily achievable; and

(v) where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable.

*Id.* § 12182(b)(2)(A).

"Congress entrusted the Attorney General with the responsibility of promulgating Title III's implementing regulations," *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1080 (9th Cir. 2004) (citing 42 U.S.C. § 12186(b)), and the Attorney General issued regulations, through notice and comment, found at 28 C.F.R. pt. 36. Accordingly, when analyzing an ambiguity or a gap in the statute, we analyze those regulations under the familiar *Chevron* framework. *Baughman*, 685 F.3d at 1136.

A. *Reasonable Modifications in Policies, Practices, or Procedures*

Plaintiff contends that Defendant's refusal to install vehicle hand controls constitutes

a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges,

advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]

42 U.S.C. § 12182(b)(2)(A)(ii).  To prevail on a claim under that statutory provision, Plaintiff must establish that:

(1) he is disabled as that term is defined by the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; (3) the defendant employed a discriminatory policy or practice; and (4) the defendant discriminated against the plaintiff based upon the plaintiff's disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability.

*Fortyune*, 364 F.3d at 1082.  If Plaintiff establishes a prima facie case, then Defendant "must make the requested modification unless it proves that doing so would alter the fundamental nature of its business."  *Id.*

At this procedural stage, we must take as true the allegations stated in the complaint.  *Brown*, 724 F.3d at 1247. Viewing the complaint through that lens, Plaintiff has stated a claim under the ADA.  Plaintiff alleges that (1) he is disabled; (2) Defendant operates a car dealership that is a public accommodation; (3) Defendant employed the discriminatory policy or practice of providing a test-driving privilege or service only to those persons capable of using

foot controls; and (4) Defendant discriminated against Plaintiff by (a) failing to make the reasonable modification of temporarily installing hand controls that can be added without significant difficulty or expense, (b) which is necessary to accommodate Plaintiff's disability.

Plaintiff's requested accommodation ultimately may prove to be unreasonable. For example, Defendant asserts that, to meet Plaintiff's needs, Defendant must purchase hand controls; create a training program for its mechanics; retain mechanics trained to install the controls; determine the ability of each customer to use hand controls; develop a protocol for evaluating the customer's needs; develop a procedure for determining whether each vehicle can be adapted; maintain a trained mechanic and "qualified driving rehabilitation employee" who would be available during all business hours; and account for increased potential liability and the resulting increase in insurance premiums.

As noted, though, we must take Plaintiff's plausible allegations as true. *Brown*, 724 F.3d at 1247. Plaintiff has alleged that hand controls are inexpensive, are easy to obtain, work on all types of vehicles, do not disable any safety features, cause no damage, and can be installed by Defendant "without much difficulty or expense." Defendant's argument to the contrary may ultimately carry the day, perhaps even at summary judgment. *See Fortyune*, 364 F.3d at 1083 ("[W]hether a particular modification is 'reasonable' involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it." (internal quotation marks omitted)). But taking the facts alleged in the complaint as true, Plaintiff's allegations suffice to establish that the

proposed modification to the test-driving privilege or service is a reasonable one.

Plaintiff's requested accommodation would not "alter the fundamental nature of [Defendant's] business." *Id.* at 1082. If the allegations in the complaint are true, Defendant would still sell cars and would still offer test drives to its customers. Plaintiff's complaint does not suggest that individually tailored controls would be required, nor does it suggest that Defendant's business model would have to accommodate on-demand, unscheduled test drives of modified cars, as Defendant argues. *Cf. id.* at 1084 (holding that a modification to a seating policy at a movie theater would not fundamentally alter the theater's business).

In sum, taking the allegations in the complaint as true, Plaintiff has stated a claim that Defendant discriminated against him by failing to make a reasonable modification to a policy, practice, or procedure.

In his separate opinion, Judge Bybee objects to the foregoing analysis on a ground not advanced by Defendant. In particular, he worries that Defendant's policy of providing a test-driving privilege or service only to those persons capable of using foot controls may not be a "polic[y], practice[], or procedure[]" under the ADA. His separate opinion does not cite any case—and we have found none—supporting its restrictive definition of "policies, practices, or procedures."

To the contrary, both the statute and our cases generally reject restrictive interpretations of the ADA. *See, e.g.*, 42 U.S.C. § 12101(b)(1) (the stated purpose of the Act is "to provide a clear and comprehensive national mandate for the

elimination of discrimination against individuals with disabilities"); *Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014) ("We construe the language of the ADA broadly to advance its remedial purpose."). The principle of broad construction is particularly apt here. As noted above, § 12182 begins with a "[g]eneral rule" in subsection (a) that "[n]o individual shall be discriminated against on the basis of disability . . . ." The "policies, practices, or procedures" text is found in subsection (b)(2)(A) which, by its clear terms, provides a non-exhaustive, illustrative list of certain actions that qualify as discrimination. *See also Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 128–29 (2005) (noting that the general non-discrimination rule in subsection (a) is "*supplemented* by various, more specific requirements," such as those found in subsection (b)(2)(A) (emphasis added)). Against that backdrop, discrimination assuredly includes Defendant's denial of a privilege to disabled persons, such as Plaintiff, when an allegedly simple, inexpensive, and temporary solution exists.

We disagree with the separate opinion that, under our interpretation, all ordinary "architectural barriers" claims may be recast as "policy or practice" claims. A permanent structural change to a building or surrounding fixtures, such as "[m]aking curb cuts in sidewalks and entrances," 28 C.F.R. § 36.304(b)(2), plainly qualifies as an "architectural barriers" claim. But it would defy ordinary usage to assert that cutting a permanent ramp into a sidewalk is a "modification" to a "policy." No matter how artfully drafted, the complaint would seek a permanent structural change in actual concrete. Not even creative lawyers ordinarily would describe such a change as a modification of a policy. Here, by contrast, Plaintiff seeks the temporary modification of a car for the purpose of a short test-drive, relief that fits comfortably

within the ordinary understanding of a modification to a policy—perhaps explaining why Defendant did not challenge this aspect of Plaintiff's claim and why the Department of Justice filed an amicus brief urging us to find a viable "policy and practice" claim.

Moreover, even assuming that some factual scenarios plausibly could fit within more than one of Congress' five illustrative examples of discrimination, we fail to see what problems that would cause. It is possible that Congress intended for the more specific definition to govern over the general definition; or perhaps Congress intended a plaintiff to be able to proceed under alternative theories of discrimination. But we need not address the issue of dueling definitions here because all of us—the majority and Judge Bybee—agree that the "architectural barriers" provision does not apply to Plaintiff's claim.

The separate opinion asserts that, if a court found that a plaintiff could proceed under both definitions, our opinion may have reduced the burden of proof because the "policy or practice" definition might be easier for plaintiffs to prove. Even if that were true, if Congress intended for both standards to apply, then we must give effect to that intent.

But we disagree with the premise that a "policy" claim is necessarily easier to prove than a "barriers" claim. Nothing in the statute purports to subject the victims of architectural discrimination to a higher burden. The prima facie case for "reasonableness" under the "policy" definition appears, for practical purposes, identical to the prima facie "readily achievable" inquiry under the "barriers" definition. *Compare Fortyune*, 364 F.3d at 1083 (describing the "reasonableness" inquiry), *with Disabled Rights Action Comm. v. Las Vegas*

*Events, Inc.*, 375 F.3d 861, 879–80 (9th Cir. 2004) (describing the "readily achievable" inquiry). But a "policy" claim—and not an "architectural barriers" claim—permits a defendant to assert an affirmative defense that "making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations."    42 U.S.C. § 12182(b)(2)(A)(ii). Accordingly, if any practical difference exists, a "policy" claim is likely *harder* to prove because a plaintiff may have to overcome an affirmative defense not available under the "barriers" definition.

## B. *Architectural Barriers in Existing Facilities*

Plaintiff also contends that Defendant's refusal to install vehicle hand controls constitutes "a failure to remove architectural barriers . . . in existing facilities."[2] 42 U.S.C. § 12182(b)(2)(A)(iv). In support, Plaintiff points to 28 C.F.R. § 36.304(a) and (b)(21). Section 36.304(a) states that "[a] public accommodation shall remove architectural barriers in existing facilities . . . where such removal is readily achievable." Section 36.304(b)(21) includes "[i]nstalling vehicle hand controls" as one of 21 "[e]xamples of steps to remove barriers." We conclude that the statutory provision does not apply in the circumstances of this case and that, therefore, the regulation cannot apply here.

The ADA repeatedly treats "facilities" and "goods" as distinct concepts when describing the reach of the statute—Congress generally intended to ensure full and equal

---

[2] We address this alternative contention both because the parties focused much of their briefing on this statutory provision and because, as just noted, an "architectural barriers" claim may be easier to prove.

enjoyment of "the *goods*, services, *facilities*, privileges, advantages, or accommodations" of qualified businesses. 42 U.S.C. § 12182(a) (emphases added); *id.* § 12182(b)(1)(A)(i), (ii) & (iii); *id.* § 12182(b)(1)(B), (E); *id.* § 12182(b)(2)(A)(i), (ii), (iii) & (v); *id.* § 12182(b)(3). But Congress limited this specific definition of discrimination to "architectural barriers . . . in existing *facilities*." *Id.* § 12182(b)(2)(A)(iv) (emphasis added).

The "barrier" that Plaintiff has encountered cannot reasonably be described as an architectural barrier in an existing facility. The barrier that Plaintiff faced was the lack of hand controls in Defendant's cars, and the cars that Defendant offered for sale are clearly goods, not facilities. *See, e.g.*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/goods (visited June 30, 2017) (defining "goods" as "something manufactured or produced for sale"). Commonly, by contrast, "facility" means the physical structure that enables (or facilitates) the business' overall mission. *See, e.g.*, *id.* at https://www.merriam-webster.com/dictionary/facility ("something (as a hospital) that is built, installed, or established to serve a particular purpose"). Similarly, the most common definition of "architecture" refers to "the art or practice of designing and building structures." *Id.* at https://www.merriam-webster.com/dictionary/architecture; *see also* Oxford English Dictionary, http://www.oed.com/view/Entry/10408 (visited June 30, 2017) (defining "architecture" as "[t]he art or science of building or constructing edifices of any kind for human use"). Read as a whole, the phrase—"architectural barriers in existing facilities"—most naturally encompasses a business' buildings and surrounding grounds. It would stretch the ordinary meaning of the phrase too far—and it would conflict

with Congress' choice to limit the reach of the "architectural barriers" provision to "facilities" only, and not to "goods"—if we interpreted the phrase, "architectural barriers in existing facilities," to include the lack of hand controls on Defendant's cars.

At the first step of the *Chevron* analysis, we ask "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter . . . ." *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). For the reasons stated above, congressional intent is clear: The provision regulating "architectural barriers in . . . existing facilities" plainly does not apply to Plaintiff's claim. But even if the statute were ambiguous, at step two we conclude that, for the same reasons, the agency's construction is not "based on a permissible construction of the statute." *Id.* at 843. Accordingly, the implementing regulation describing the temporary installation of vehicle hand controls as an example of removing an architectural barrier in an existing facility, 28 C.F.R. § 36.304(b)(21), is inapplicable to Plaintiff's claim.[3]

## C. *Additional Implementing Regulations*

Defendant argues that, even if the text of the ADA is broad enough to encompass Plaintiff's claim, two of the

---

[3] Our decision is limited, as it must be, to the particular question before us. Nothing in this opinion is intended to cast doubt on the application of this statutory section and the corresponding regulation to other factual scenarios, such as the practice by rental-car companies of installing vehicle hand controls in their rental cars. We decline the separate opinion's invitation to address factual situations and legal issues not before us.

implementing regulations independently preclude his statutory claim. We disagree.

Defendant first points to 28 C.F.R. § 36.307(a), which states:

> This part does not require a public accommodation to alter its inventory to include accessible or special goods that are designed for, or facilitate use by, individuals with disabilities.

Defendant reasons that installing temporary vehicle hand controls will alter the vehicles that it sells, its vehicles for sale constitute its inventory, and Plaintiff's claim therefore fails. Although Defendant's argument appears plausible at first blush, it does not withstand scrutiny.

The term "inventory" in this regulation means the business' set of items comprising its inventory as a whole—it does not mean each individual item in the inventory. The usual meaning of "inventory" is "an itemized list of current assets: such as (1) a catalog of the property of an individual or estate [or] (2) a list of goods on hand." Merriam-Webster Dictionary. And contextually, it is plain that Congress used "inventory" in this ordinary sense. The regulation concerns when a business must "alter its inventory *to include accessible or special goods*." 28 C.F.R. § 36.307(a) (emphasis added). Similarly, the next subsection of the regulation creates an exception to the general rule by requiring that a "public accommodation shall *order* accessible or special goods" in some circumstances. *Id.* § 36.307(b) (emphasis added). The regulation thus pertains to the circumstances in which a business must order additional

goods; it does not speak to Plaintiff's requested accommodation—a temporary, short-term modification to an existing individual item already contained in Defendant's inventory. The district court in *Funches*, 2016 WL 2939165, at \*6, provided a helpful summary: "While places of public accommodation are generally not required to alter their inventories by manufacturing or ordering specialty goods, they *are* required to make reasonable, temporary adjustments to goods already in stock if doing so will help disabled customers access the same goods and services as non-disabled customers."

Defendant next points to 28 C.F.R. § 36.306, which states:

> This part does not require a public accommodation to provide its customers, clients, or participants with personal devices, such as wheelchairs; individually prescribed devices, such as prescription eyeglasses or hearing aids; or services of a personal nature including assistance in eating, toileting, or dressing.

Defendant reads that regulation to create a categorical rule precluding any claim under the ADA that would require public accommodations to provide "personal devices." Defendant then asserts that, because vehicle hand controls are "personal devices" within the meaning of the regulation, Plaintiff's claim fails. For the reasons that follow, we are not persuaded.

The phrase "personal devices" is flexible enough that it could describe *all* devices that one uses personally—

encompassing wheelchairs, prescription eyeglasses, and hearing aids, but also steering wheels, door handles, turn-signal levers, gearshifts, radio knobs, brake pedals, and accelerators. Under that broad definition, vehicle hand controls, like vehicle foot controls, would qualify as "personal devices" because a driver uses the controls personally.

But if we were to adopt such a broad definition of "personal devices," it would cause a conflict in the regulations. In particular, 28 C.F.R. § 36.303 requires businesses, in certain circumstances, to provide many devices that a customer uses personally. For example, § 36.303(g) requires movie theaters to provide "audio description devices," which aurally describe to the patron the action occurring on the big screen; and the same regulation requires movie theaters to provide "captioning devices," which visually depict the movie's auditory features, such as dialogue. Those devices are used personally by customers. *See id.* § 36.303(g)(iii) & (iv) (describing the devices as "the individual device that a patron may use at any seat"). Thus, under a broad reading of "personal devices," the regulations conflict: One regulation flatly prohibits devices-used-personally, and a nearby regulation details many devices-used-personally that businesses must provide.

When confronted with an irreconcilable conflict in two legal provisions, we may apply the interpretive principle that the specific governs over the general. In essence, the general rule applies unless a more specific rule provides otherwise. Applied here, that principle would operate to carve out an exception to the general prohibition on "personal devices" whenever the regulations elsewhere required the provision of "personal devices." Although that interpretation appears

plausible at first blush, we are persuaded that the agency did not intend that legalistic analysis.

The conflict here is not subtle or abstract:  One regulation *forbids* all "personal devices," and a nearby regulation *requires* some "personal devices."  *Cf. Nat'l Ass'n of Home Builders v. San Joaquin Valley Unified Air Pollution Control Dist.*, 627 F.3d 730, 737 (9th Cir. 2010) ("It would be odd if the Act took away . . . with one hand what it granted with the other.").  Reading § 36.306 to encompass all devices-used-personally thus requires adding an implicit qualifier—"Except as otherwise provided in this part"—to § 36.306:  "*Except as otherwise provided in this part*, this part does not require a public accommodation to provide . . . personal devices . . . ."  But the agency clearly knew how to write its regulations in that fashion.  For example, § 36.103(a) states:  "Except as otherwise provided in this part, this part shall not be construed [in a certain way]."  Similarly, § 36.508(a) states:  "Except as otherwise provided in this section and in this part, this part shall become effective on January 26, 1992."  We do not think that the agency would have added an *explicit* qualification to other regulations while at the same time leaving it up to the courts to read an *implicit* qualification into this particular regulation.

Rather than reading § 36.306 in a way that conflicts with § 36.303, we read the regulations in harmony.  In other words, we apply "the familiar rule of construction that, where possible, provisions of a [regulation] should be read so as not to create a conflict."  *La. Pub. Serv. Comm'n v. FCC*,

476 U.S. 355, 370 (1986).[4]  The examples of devices listed in the regulation—wheelchairs, prescription eyeglasses, and hearing aids—suggest a narrower definition.  *Cf. Yates v. United States*, 135 S. Ct. 1074, 1085 (2015) ("a word is known by the company it keeps").  All of those devices are independently useful objects that a person possesses for a general purpose.  Understood in that manner, the two regulations do not conflict, because the devices listed in § 36.303 do not meet that definition.  For example, the audio and visual devices described above have no utility by themselves; they must be coordinated with the showing of the film.

This narrower interpretation of "personal devices" comports with the overall purpose of the ADA to require businesses to accommodate persons with disabilities whenever doing so is reasonable.  From a practical standpoint, it would make little sense to require all businesses to make available, for example, wheelchairs or a wide array of prescription eyeglasses.  It is far more practical, and consistent with the intent of the ADA, to expect a person in need of such a general-purpose device to possess one.

The same reasoning yields the opposite result with respect to specialized devices that must be installed or coordinated with a business' system.  For example, it would make little sense to require all persons with hearing disabilities to possess a captioning device that may or may not work with a

---

[4] That interpretive canon, like "the specific governs over the general," ordinarily applies to provisions of a statute.  But we regularly hold that a generic canon of statutory interpretation "applies equally to regulations," *Lezama-Garcia v. Holder*, 666 F.3d 518, 531 n.13 (9th Cir. 2011), and we see no reason why these two canons do not apply equally to regulations.

particular movie theater's captioning system. Instead, it makes far more sense to expect a business to provide the personal receivers that work with the theater's system. Indeed, the agency made that intent clear when it promulgated these regulations. *See* Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 35 Fed. Reg. 35544-01, 35,571 (July 26, 1991) ("[T]his section [§ 36.306] does not preclude the short-term loan of personal receivers that are part of an assistive listening system.").

The same analysis applies to vehicle hand controls. It makes little sense to require a person to possess a spare set of hand controls—of a brand that a dealership may or may not know how to install—simply for the few occasions in the person's lifetime when he or she wants to test-drive a car. It is far more practical to require dealerships that voluntarily offer the privilege or service of test-drives to carry hand controls—of a brand that the dealership knows how to install—for use when a customer seeks a test-drive (assuming, of course, that providing hand controls is "reasonable" and that the other statutory requirements are met).

In sum, our narrower reading of "personal devices" in § 36.306 is more consistent with the overall structure of the regulations and with the purpose of the ADA. Accordingly, § 36.306 does not preclude Plaintiff's claim.

CONCLUSION

Plaintiff has stated a claim under 42 U.S.C. § 12182(a) and (b)(2)(A)(ii), and nothing in the implementing regulations categorically precludes that claim. We reiterate the limited nature of our holding, which necessarily assumes the truth of Plaintiff's allegations. For many car dealerships, the accommodation of installing temporary vehicle hand controls may prove to be unreasonably burdensome. But we cannot conclude that the ADA categorically precludes a claim that a car dealership must provide hand controls for test drives, which necessarily would encompass situations in which the provision of hand controls would be reasonable. For example, the installation of vehicle hand controls is likely reasonable at a large dealership that regularly installs hand controls, has spare universal hand controls on hand, and employs many mechanics with expertise in installing hand controls, when advance notice is given by a customer with clear expertise in using hand controls. Rather than interpreting the ADA *never* to require the provision of vehicle hand controls, no matter the situation, we conclude that it is more consistent with the text of the ADA, with the Act's overall intent, and with our caselaw, to inquire into the underlying facts. *See, e.g.*, *Baughman*, 685 F.3d at 1135 ("Public accommodations must start by considering how their facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience.").

**REVERSED and REMANDED.**

BYBEE, Circuit Judge, acquiescing *dubitante*:

The Old Testament prophet Elijah once asked the people of Samaria, "How long halt ye between two opinions?" 1 *Kings* 18:21 (King James). Like the ancient inhabitants of the Northern Kingdom, I find myself in the perplexing situation of having halted between two opinions—because I am neither able to join the majority opinion nor have I been able to write a full-throated dissent. Recognizing that it isn't any better a place to be today than it was in Elijah's day (but also admitting that his audience had weightier questions on their minds than questions of statutory interpretation), it is nevertheless the place in which I find myself. I acquiesce in the judgment, but *dubitante*.[1]

I

I am going to start in a different place from the majority. I wish to begin with the plaintiff's sole issue on appeal: Whether we must defer to DOJ's regulation requiring that car dealers "[i]nstall[] vehicle hand controls," 28 C.F.R. § 36.304(b)(21), as a reasonable construction of the ADA.

---

[1] *See Credit Suisse First Bos. Corp. v. Grunwald*, 400 F.3d 1119, 1151 (9th Cir. 2005) (Berzon, J., concurring in the judgment) ("[B]ecause I cannot conclude with any reasonable certainty that the result . . . is necessarily wrong given the above-articulated concerns, the only prudent course of action for me is to set out my views in detail, as I have done, and to concur in the judgment, while remaining *dubitante*. *See* LON L. FULLER, ANATOMY OF THE LAW 147 (1968) ('[E]xpressing the epitome of the common law spirit, there is the opinion entered *dubitante*—the judge is unhappy about some aspect of the decision rendered, but cannot quite bring himself to record an open dissent.').") (third alteration in original) (emphasis omitted)). *See generally* Jason J. Czarnezki, *The Dubitante Opinion*, 39 AKRON L. REV. 1 (2006) (providing a history of *dubitante* opinions).

For its part as *amicus*, DOJ argues that its regulation on vehicle hand controls was the "most applicable regulation" whose "plain language" means that "the absence of hand controls in a vehicle is a physical barrier that a public accommodation must remedy under Title III." Brief for the United States as *Amicus Curiae* 10–13, ECF No. 22.

The ADA starts with a broad, general rule: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). The ADA then offers five examples of specific prohibitions, two of which are relevant here:

> discrimination includes—
>
> . . . .
>
> (ii) a failure to make reasonable modifications in policies, practices, or procedures . . . unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;
>
> . . . .
>
> (iv) a failure to remove architectural barriers . . . where such removal is readily achievable[.]

*Id.* § 12182(b)(2)(A). DOJ has addressed the architectural barriers provision, § 12182(b)(2)(A)(iv), in some detail. Here

is the relevant portion of the regulation enforcing that provision:

> Examples of steps to remove barriers include, but are not limited to, the following actions—
>
> (1) Installing ramps;
>
> (2) Making curb cuts in sidewalks and entrances;
>
> (3) Repositioning shelves;
>
> (4) Rearranging tables, chairs, vending machines, display racks, and other furniture;
>
> (5) Repositioning telephones;
>
> (6) Adding raised markings on elevator control buttons;
>
> (7) Installing flashing alarm lights;
>
> (8) Widening doors;
>
> (9) Installing offset hinges to widen doorways;
>
> (10) Eliminating a turnstile or providing an alternative accessible path;
>
> (11) Installing accessible door hardware;
>
> (12) Installing grab bars in toilet stalls;

(13) Rearranging toilet partitions to increase maneuvering space;

(14) Insulating lavatory pipes under sinks to prevent burns;

(15) Installing a raised toilet seat;

(16) Installing a full-length bathroom mirror;

(17) Repositioning the paper towel dispenser in a bathroom;

(18) Creating designated accessible parking spaces;

(19) Installing an accessible paper cup dispenser at an existing inaccessible water fountain;

(20) Removing high pile, low density carpeting; or

(21) Installing vehicle hand controls.

28 C.F.R. § 36.304(b). Twenty of the twenty-one items on this list refer to accommodations that must be made in fixed structures; one relates to vehicles. Even a child can tell that one of these things is not like the others. *See generally* SESAME STREET, *One of These Things (Is Not Like the Others)*, *on* SESAME STREET BOOK & RECORD (Columbia Records 1970).

Sensibly, the majority does not buy DOJ's reading of the ADA. Neither do I. "Installing vehicle hand controls" cannot be a reasoned application of the ADA's command to "remove architectural barriers . . . in existing facilities" for the simple reason that "architectural barriers" ought to have something to do with architecture.[2]   Indeed, the majority concludes that § 12182(b)(2)(A)(iv) does not apply here and, thus, the regulation is "inapplicable."   Maj. Op. at 16, 17.   The majority then suggests, in dicta, that if it were to reach the question, then it would hold that "the agency's construction is not 'based on a permissible construction of the statute.'" *Id.* at 16 (quoting *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)).

I would simply hold that § 36.304 is not a permissible construction of the architectural barrier provision of the ADA, § 12182(b)(2)(A)(iv).   The regulation is not "inapplicable" to the plaintiff's claim, as the majority says; it was the heart and soul of the plaintiff's claim and the basis for DOJ's *amicus* brief.   And if the regulation is not applicable here, where would it be applicable?   We should have just said the obvious: that portion of § 36.304 requiring "vehicle hand controls" is not a reasonable construction of the statute it purports to implement and is a dead letter.

---

[2] The regulations define "facility" as "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located."   28 C.F.R. § 36.104.

II

Anticipating that we would not sustain its regulation on vehicle hand controls, DOJ offered us a half-hearted alternative—salvaged from the plaintiff's complaint but otherwise ignored by the plaintiff on appeal—which the majority accepts: we can characterize the car dealer's refusal to install hand controls as "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii); *see* Maj. Op. at 9–15. The plaintiff alleged that the car dealer "employed the discriminatory policy or practice of providing a test-driving privilege or service only to those persons capable of using foot controls." Maj. Op. at 10–11. According to the majority, that suffices to "state[] a claim that [the defendant] discriminated against [the plaintiff] by failing to make a . . . modification to a policy, practice, or procedure." *Id.* at 12.

On an initial reading of the statute, the majority's conclusion is plausible. It doesn't stretch the ADA beyond recognition to say that the dealer here had a policy, procedure, or practice that permits able-bodied persons, but not the plaintiff, to test-drive its cars. That "policy" is a natural consequence of the dealer only stocking standard-make cars that depend on foot controls. A buyer who wants a car, but needs hand controls to operate it, will have to install the controls at his own expense. The dealer allows customers to drive the cars the dealer is selling, and they don't come with hand controls.

On further reflection, however, I have two objections to the majority's analysis. First, under the majority's aggressive reading of the ADA—which, so far as I can tell, no other court has adopted—*everything* can be construed as a policy, practice, or procedure. The majority characterizes the plaintiff's argument as "Defendant employed the discriminatory policy or practice of providing a test-driving privilege or service only to those persons capable of using foot controls[.]" Maj. Op. at 10–11. The form of this argument—"Defendant employed the discriminatory policy or practice of providing *X* only to those persons capable of doing *Y*"—has endless possibilities. Consider the following examples, all consistent with this form.

> 1.    The grocery store employed the discriminatory policy or practice of providing shopping only to those persons capable of doing so without a personal shopper.

> 2.    The commercial airline employed the discriminatory policy or practice of providing transportation only to those persons who are capable of sitting upright in a seat.

> 3.    The building owner employed the discriminatory policy or practice of providing access to restrooms only to those persons capable of using facilities without the aid of a grab bar.

At least one of these examples—the restroom in a building—is certainly covered by the ADA and its regulations, and quite specifically. 28 C.F.R. § 36.304(b)(12) (requiring grab bars in restroom stalls). In the past, a plaintiff

would have brought a claim about an inaccessible restroom under the "architectural barriers . . . in existing facilities" provision of the ADA, § 12182(b)(2)(A)(iv). After today's case, a sensible plaintiff will also argue that he has a claim under § 12182(b)(2)(A)(ii) as well. I don't think that either of the other examples are covered by the architectural barriers provision of ADA, and, until today, it is questionable whether either example would survive a motion to dismiss. But after today's broad decision, plaintiffs can bring these claims and argue that they are covered by the policy-and-practices provision.

The majority disagrees with my assessment. It responds that the architectural provision still has bite because some barriers can't be forced under the "policies, practices, and procedures" rubric. Writes the majority:

> We disagree with the separate opinion that, under our interpretation, all ordinary "architectural barriers" claims may be recast as "policy or practice" claims. A permanent structural change to a building or surrounding fixtures, such as "[m]aking curb cuts in sidewalks and entrances," 28 C.F.R. § 36.304(b)(2), plainly qualifies as an "architectural barriers" claim. But it would defy ordinary usage to assert that cutting a permanent ramp into a sidewalk is a "modification" to a "policy."

Maj. Op. at 13 (alteration in original). The majority has misunderstood the strength of its own argument. I agree that a permanent ramp is not a "modification" to a policy (just as installing vehicle hand controls on a car is not a modification

to a policy). But just as the majority holds that the dealer has a policy of not allowing foot-impaired drivers to test-drive its cars, it takes only a little lawyerly imagination to accuse the building owner of having a policy or practice of not installing permanent ramps in its sidewalks, thus denying its disabled patrons the equal access to its facilities.

The majority's aggressive reading of § 12182(b)(2)(A)(ii) has a real consequence: it gives putative plaintiffs heretofore unknown abilities to choose the standard of scrutiny their claims must meet to succeed. Take the restroom example. A plaintiff who claims that the owner of a building has maintained an "architectural barrier" in violation of § 12182(b)(2)(A)(iv) and its regulations must at least make an initial showing that "removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv); *see Colo. Cross Disability Coal. v. Hermanson Family Ltd.*, 264 F.3d 999, 1002 (10th Cir. 2001); *Johnson v. YIP Holdings Five, LLC*, No. 2:14-cv-1114-WBS-EFB, 2015 WL 5435659, at *2–3 (E.D. Cal. Sept. 15, 2015). But if the same plaintiff also alleges that the building owner "employed the discriminatory policy or practice of providing access to restrooms only to those persons capable of doing so without the aid of a grab bar" and could reasonably modify it, the *defendant* must show that making the modification to its policy or practice "would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii); *see Colo. Cross*, 264 F.3d at 1003; *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 816–17 (9th Cir. 1999); *Johnson v. Gambrinus Co./Spoetzel Brewery*, 116 F.3d 1052, 1059 (5th Cir. 1997). Indeed, a savvy plaintiff who has an architectural barrier argument will always bring a policies, practices, and procedures claim as well. Once the plaintiff makes out a prima facie case, the

defendant must demonstrate that the removal of its architectural barrier is "not readily achievable," 42 U.S.C. § 12182(b)(2)(A)(iv), *and* that modifying its policy "would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations," *id.* § 12182(b)(2)(A)(ii).

The majority responds to my concern by telling us that there is no difference between the two standards, that they are, "for practical purposes, identical." Maj. Op. at 14. This is not reassuring. Ordinarily, when Congress adopts two different standards within the same legislation, we assume that the standards mean different things. "A presumption that a single word means the same thing throughout a statute goes together with a presumption that different words mean different things." *Med. Coll. of Wis. Affiliated Hosps., Inc. v. United States*, 854 F.3d 930, 933 (7th Cir. 2017); *see also Mohamad v. Palestinian Auth.*, 566 U.S. 449, 455–56 (2012); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004). Congress may occasionally engage in "elegant variation"—adopting different language to mean the same thing, perhaps to stave off its own boredom—but we have a presumption against elegant variation. *See EEOC v. Gilbarco, Inc.*, 615 F.2d 985, 999 & n.23 (4th Cir. 1980) ("Congress determined in closely related circumstances to use two different terms. It is, therefore, more likely than not that the use of different language indicated a legislative intention to mean different things."); *see also Burlington Indus. Inc. v. Dayco Corp.*, 849 F.2d 1418, 1421–22 (Fed. Cir. 1988) (discussing the risks of elegant variation in legal documents).

Second, I harbor serious reservations about whether we should construe "policies, practices, and procedures" so broadly when DOJ's regulations and manuals have taken a

more modest approach to those terms. DOJ's regulations interpreting § 12182(b)(2)(A)(ii) focus on examples that are far more policy-like than the dealership's "policy" here. *See*, *e.g.*, 28 C.F.R. § 36.302(c) (forbidding, among other things, surcharges for service animals and other policies that ban service animals); *id.* § 36.302(e) (requiring modifications to hotel reservation systems); *id.* § 36.302(f) (requiring modification to seating policies for ticketed events); *see also* DEP'T OF JUSTICE, ADA TITLE III TECHNICAL ASSISTANCE MANUAL, at III-4.2100–2400 (1993) [hereinafter TAM], https://www.ada.gov/taman3.html. These areas are within the core of what in ordinary conversation we consider to be policies, practices, and procedures. So a doctor who routinely refers certain kinds of medical problems to another specialist is not discriminating against a disabled patient when he "would make a similar referral for an individual without a disability." 28 C.F.R. § 36.302(b)(2). However, the doctor may not refer individuals with disabilities to another physician when he would treat similarly situated patients without the same disability. Similarly, a grocery store with check-out aisles that accommodate the disabled must "ensure that an adequate number of accessible check-out aisles are kept open during store hours." *Id.* § 36.302(d); TAM III-4.2400. The store doesn't get to open wheelchair-accessible aisles during the day but close them at night; such a policy violates § 12182(b)(2)(A)(ii). These are policies or practices as we typically conceive of those terms—a way of doing things, a course of action. Once we find we can wrap up anything as a policy, practice, or procedure, DOJ's regulations become nearly meaningless.[3]

---

[3] The TAM makes clear that DOJ believed that the architectural barriers provision and the policies, practices, and procedures provision

The point is reinforced when we consider DOJ's regulation regarding "vehicle hand controls" that the plaintiff and DOJ urged on us. DOJ thought that vehicle hand controls were required by the ADA, but it located that restriction in § 12182(b)(2)(A)(iv), not in § 12182(b)(2)(A)(ii). The majority resuscitates the essence of the regulation, but locates it in a different provision of the ADA. If the majority had done so formally, it would be a flat violation of the *Chenery* principle that we don't supply a rationale where the agency's explanation has failed. *See SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943). The majority has accomplished indirectly what it couldn't have done directly. We should hesitate long before going down this road when DOJ adopted an on-point regulation, but did so under a different provision of the ADA.

---

covered different problems. One of its illustrations for a policy, practice or procedure states:

> Under its obligation to remove architectural barriers where it is readily achievable to do so, a local motel has greatly improved physical access in several of its rooms. However, under its present reservation system, the motel is unable to guarantee that, when a person requests an accessible room, one of the new rooms will actually be available when he or she arrives. The ADA requires the motel to make reasonable modifications in its reservation system to ensure the availability of the accessible room.

TAM III-4.2100 (Illustration 2). Under the majority's reasoning, both accessibility problems—the motel's architectural barriers and its reservation system—could be addressed through § 12182(b)(2)(A)(ii), and not through § 12182(b)(2)(A)(ii) and (iv) as DOJ contemplated.

## III

These are challenging interpretive questions for the ADA. I question whether the majority has got this one right. On the other hand, I don't have a full answer for the majority's analysis. I remain halted between two opinions, *dubitante*.