# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-1460

_____

Matina Koester; N.K., By next friend Matina Koester

*Plaintiffs - Appellants*

v.

Young Men's Christian Association of Greater St. Louis

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 12, 2017
Filed: May 2, 2017

_____

Before LOKEN, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

Matina Koester appeals the district court's[1] grant of summary judgment in favor of the YMCA of Greater St. Louis (YMCA) in this Americans with Disabilities Act (ADA) public accommodations case. We affirm.

_____

[1]The Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri.

## I.    BACKGROUND

Koester's minor child, N.K., is an individual with a disability within the meaning of Title III (the public accommodations prong) of the ADA. N.K. has Down syndrome and autism. The YMCA provides children with summer camp opportunities that are advertised as enriching, creative, recreational, and self-esteem enhancing, and are open to children of all abilities. At summer camps, the YMCA has sole custody of the child for up to ten hours per day. The YMCA Family Handbook provides that if participating children have an Individualized Education Plan (IEP) or a behavioral management plan through the schools, a copy of that plan "must" be given to the director and reviewed before the child's participation is authorized. The purpose of this requirement is to allow the YMCA to determine reasonable and necessary accommodations for children with disabilities.

In May 2014, Koester sought to enroll N.K. in a YMCA summer camp and called the YMCA to inquire about the requirements for enrollment. YMCA employees informed Koester that the YMCA would need a copy of N.K.'s IEP to complete the enrollment in summer camp. Koester objected to this requirement, believing that the document was highly personal and confidential and instead offered to meet with the director and discuss what accommodations would be necessary for N.K. During the phone call, YMCA employees (as best we can tell, Koester spoke to at least three YMCA employees on the phone that day) reiterated that the IEP was required for enrollment. Koester did not ultimately fill out any paperwork to have N.K. participate in the summer camp. And as we understand the record, the next contact between Koester and the YMCA was in October 2014, when counsel for Koester sent the YMCA a letter dated October 10, 2014, stating that for future summer camp participation and in lieu of providing the IEP, Koester was willing to provide additional information about N.K.'s limitations and need for accommodations from N.K.'s pediatrician. The YMCA responded with a letter, dated October 17, 2014, explaining its IEP policy and describing its belief that the IEP information was

necessary in a setting where the child would be in the custody of the YMCA for upwards of ten hours per day. However, in this letter, the YMCA ultimately offered an alternative to the IEP requirement. The October 17 letter indicated the YMCA would accept information from N.K.'s pediatrician regarding N.K.'s "socio-emotional, adaptive behavior, speech/language, fine/gross motor functioning and cognitive functioning," along with N.K.'s specific diagnosis and "information regarding the need for adaptive equipment, communication skills, dietary restrictions, behavioral concerns, toileting information, behavioral triggers, ability to interact with peers/adults and his ability to follow directions." Nonetheless, Koester brought the current action in federal court days later, on October 20, 2014, asserting a violation of Title III of the ADA, 42 U.S.C. §§ 12181-12189. Koester alleged that the YMCA discriminated against N.K. based upon his disability by refusing to make a reasonable modification to its IEP policy and that Koester proposed to "engage in an interactive process to determine what accommodations for N.K. would be reasonable." Upon cross motions for summary judgment, the district court granted the YMCA's motion. The district court found that the YMCA did not discriminate against N.K., and further, that Koester's proposed modification was not a reasonable request, and even if it had been reasonable, it would have fundamentally altered the YMCA summer camp program. Koester appeals.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo, applying the same standards as the district court. Tusing v. Des Moines Indep. Cmty. Sch. Dist., 639 F.3d 507, 514 (8th Cir. 2011). Summary judgment is appropriate where the evidence shows no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Id. The evidence and all inferences must be viewed in the light most favorable to the nonmoving party. Id.

Title III of the ADA prohibits discrimination by public accommodations and provides, "[n]o individual shall be discriminated against on the basis of disability in

the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To establish a claim under Title III, the person alleging disability must show that:

> (1) that he is disabled within the meaning of the ADA, (2) that the defendant is a private entity that owns, leases, or operates a place of public accommodation, (3) that the defendant took adverse action against the plaintiff that was based upon the plaintiff's disability, and (4) that the defendant failed to make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature of the public accommodation.

Amir v. St. Louis Univ., 184 F.3d 1017, 1027 (8th Cir. 1999). The parties agree that N.K. is disabled within the meaning of the ADA by virtue of his diagnoses of Down syndrome and autism. Further, the YMCA operates a place of public accommodation. At issue in this case are prongs three and four of the above test: whether the YMCA took adverse action against N.K. based upon his disability, and to a somewhat lesser degree, but one we will analyze, whether the YMCA failed to make reasonable, requested modifications to its IEP policy.

Koester argues that the YMCA's blanket policy of requiring a child's IEP before admitting the child to its summer camp programs is discriminatory because the IEP in effect serves to screen out children with disabilities from the YMCA summer camp programs. Discrimination is defined by the statute to include application of policies which tend to screen out disabled individuals, unless the policy is necessary to provide those services. 42 U.S.C. § 12182(b)(2)(A)(i). Furthermore, discrimination includes the failure to make reasonable modifications in policies, practices or procedures necessary to accommodate disabled individuals, unless doing so would fundamentally alter the nature of the service. Id. § 12182(b)(2)(A)(ii).

Koester argued that the YMCA did not show that providing the entire IEP, as opposed to just the portions of it relevant to the camper's experience, was a necessity for the YMCA to provide its summer camp services. The district court found that the YMCA did not need to show necessity because the IEP requirement did not have a tendency to screen out individuals. Instead, the purpose of the IEP requirement, the district court found, was to better accommodate children with disabilities and keep all children safe. The court specifically found that the undisputed facts showed that the purpose of the IEP requirement was not to identify children with disabilities; it was to best serve children, already identified by their parents as needing special accommodations.

We are sympathetic to the argument that the YMCA likely does not need to view the entirety of a child's IEP in order to accommodate disabled campers. In deposition testimony, the YMCA Director of Inclusion Services admitted that there was information in the IEP that was unnecessary for the YMCA to carry out its summer camp programs. At oral argument, counsel for the YMCA agreed that a redacted version of the IEP certainly would have sufficed for its purposes of accommodating children during summer camp. However, the parties did not get to that point in their interaction, and Koester did not ultimately fill out enrollment papers or take other action to sign N.K. up for summer camp.

Koester's strongest argument is based upon an illustration in the Department of Justice's Technical Assistance Manual for Title III of the ADA. See Klingler v. Dir., Dep't of Revenue, State of Mo., 433 F.3d 1078, 1081 (8th Cir.), opinion supplemented on reh'g, 455 F.3d 888 (8th Cir. 2006) (ADA Technical Assistance Manuals are agency interpretations entitled to "some" deference). Section 4.1300 indicates that the ADA prohibits unnecessary inquiries into the existence of a disability. Illustration 1 to that section states:

> A private summer camp requires parents to fill out a questionnaire and
> to submit medical documentation regarding their children's ability to

participate in various camp activities. The questionnaire is acceptable if the summer camp can demonstrate that each piece of information requested is needed to ensure safe participation in camp activities. The camp, however, may not use this information to screen out children with disabilities from admittance to the camp.

ADA Title III Technical Assistance Manual at § 4.1300, Illus. 1 (1993).

Giving this illustration some deference, we find that it ultimately does not advance Koester's cause. While the summer camp here cannot demonstrate that each piece of information requested is needed (and in fact has conceded the opposite), there is not a scintilla of evidence that the IEP requirement screened out applicants with disabilities. Indeed, a YMCA employee indicated that Koester was the first parent to refuse to provide the IEP as part of the enrollment process for summer camp; that the IEP requirement had been in place for nearly fifteen years; and the YMCA successfully accommodates more than 700 campers with various disabilities each summer. Thus, we find the district court correctly concluded at step three of the prima facie case that Koester could not establish that the YMCA took adverse action against N.K.

The district court nonetheless went on to evaluate whether the YMCA failed to make reasonable modifications that would accommodate N.K.'s disability without fundamentally altering the nature of the public accommodation. N.K.'s accommodation claim is unusual, however, because the accommodation requested relates to the YMCA's information requirements, rather than any particular steps the YMCA might take (or might refuse to take) to provide physical or emotional support to N.K. during his participation in the YMCA summer camp. For instance, the more typical failure-to-accommodate claim in this kind of case would be that a parent requested one-on-one support for her child and the organization refused to provide it. The district court found that Koester's requested "accommodation" was to enroll N.K. without providing an IEP, and that such modification to the YMCA's policies

-6-

was not reasonable because it would fundamentally alter the nature of the YMCA's programs. While we are not necessarily convinced this is the kind of accommodation Title III of the ADA contemplates, we will proceed under the assumption that Koester's request to provide less information than the entire IEP was a request for an accommodation.

In her complaint, Koester asserts that she "offered to engage in an interactive process to determine what accommodations for N.K. would be reasonable." In the employment context, once an employee has requested accommodation, the employer must engage in an interactive process to find reasonable accommodations for the disability, and its failure to engage in this process is evidence of the employer's bad faith. Fjellestad v. Pizza Hut of Am., Inc. 188 F.3d 944, 951-52 (8th Cir. 1999). To show an employer failed to participate in the interactive process, the employee must show the employer knew about the disability; accommodations were requested; the employer did not make a good faith effort to assist with the accommodation requested; and the employee could have been reasonably accommodated but for the employer's lack of good faith. EEOC v. Prod. Fabricators, Inc., 763 F.3d 963, 971 (8th Cir. 2014). Again, assuming with a hefty dose of skepticism that these concepts are applicable in this Title III[2] case, the YMCA participated in an interactive process in good faith by responding within days to Koester's October letter. The YMCA's letter did not cursorily adhere to its original demand for the IEP, but instead set forth the information it would need to administer its program, via a third-party source such as N.K.'s pediatrician. The interactive process ended when Koester filed suit shortly thereafter. Contrary to Koester's arguments, the YMCA did offer to modify the policy as long as it obtained the information it deemed necessary to accommodate N.K.

---

[2]Indeed, an electronic search of the Technical Assistance Manual, cited by Koester, contains no references to the term "interactive process" and the term "reasonable accommodation" is used only three times, to discuss analogies to or the requirements of Title I employment accommodation situations. See also Mershon v. St. Louis Univ., 442 F.3d 1069, 1078 (8th Cir. 2006) (speculating in Title III case about whether the interactive process is required in an academic setting).

While she argues that she offered to engage in an individualized, interactive process, the record belies this notion; "interaction" concluded when Koester filed suit after the mutual exchange of exactly one letter. Thus, we find that Koester cannot establish the fourth step of the prima facie case because Koester filed suit before any particular or final decisions were made. Accordingly, we find that the YMCA did not unreasonably fail to accommodate N.K.[3]

## III. CONCLUSION

If the YMCA had refused to enroll N.K. based upon his disability, or if it had examined the IEP and refused to provide accommodations for camp participation based upon the information in the IEP, this might be a different case. As it is, the YMCA did not violate Title III of the ADA.[4]

—————————————————

[3]Koester argues that the YMCA's discriminatory intent should not even be in issue, and instead, her claim should be analyzed under the "modified burden shifting analysis" of an accommodation claim–(1) that N.K. is disabled; (2) the YMCA is a place of public accommodation; and (3) the YMCA failed to reasonably modify its policies to accommodate N.K.'s disabilities, unless such modification would fundamentally alter the nature of its summer day camp. Mershon, 442 F.3d at 1076. We agree with the YMCA that Koester did not advance this theory to the district court (likely because she pleaded a discrimination cause of action).

[4]The YMCA moved to supplement the record on appeal to include late-disclosed discovery evidence of other lawsuits filed by Koester. Because we find that the YMCA prevails without inclusion of the supplemental materials, we deny the motion as moot.