**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARK TAUSCHER,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>PHOENIX BOARD OF REALTORS,<br>INCORPORATED, DBA Phoenix<br>Association of Realtors,<br>*Defendant-Appellee.* | No. 17-17218<br><br>D.C. No.<br>2:15-cv-00125-<br>SPL<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Arizona
Steven Paul Logan, District Judge, Presiding

Argued and Submitted May 13, 2019
San Francisco, California

Filed July 25, 2019

Before: Sidney R. Thomas, Chief Judge, Sandra S. Ikuta,
Circuit Judge, and Donald W. Molloy,* District Judge.

Opinion by Judge Ikuta

---

*The Honorable Donald W. Molloy, United States District Judge for
the District of Montana, sitting by designation.

## SUMMARY[**]

### Americans with Disabilities Act

The panel reversed the district court's grant of summary judgment in favor of the defendant in an action brought under Title III of the Americans with Disabilities Act and the Arizonans with Disabilities Act.

Plaintiff, a profoundly deaf individual who is a licensed real estate salesperson, alleged that the Phoenix Association of Realtors failed to comply with the ADA and AzDA when it denied plaintiff's requests for an American Sign Language interpreter at continuing education courses.

A public accommodation must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. The panel held that PAR was not required to provide the specific aid or service requested by plaintiff, but there was a genuine issue of material fact as to whether PAR offered plaintiff a means of communication that was effective.

The panel held that the ADA's requirement that an employer engage in an interactive process regarding possible accommodations does not apply in the context of public accommodations and services. Accordingly, PAR was not discharged of its obligation to ensure effective communication merely because plaintiff did not engage in

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

further discussion with PAR regarding measures other than an ASL interpreter.

The panel concluded that the question whether providing an ASL interpreter would result in an undue burden on PAR raised complex issues that the district court was better able to address in the first instance. The panel vacated the district court's summary judgment and remanded for proceedings consistent with its opinion.

## COUNSEL

William August Richards (argued) and David E. Wood, Baskin Richards PLC, Phoeniz, Arizona; Andrew Rozynski, Eisenberg & Baum, New York, New York; for Plaintiff-Appellant.

Brian Alexander Howie (argued) and Eric B. Johnson, Quarles & Brady LLP, Phoenix, Arizona, for Defendant-Appellee.

**OPINION**

IKUTA, Circuit Judge:

Mark Tauscher is a profoundly deaf individual who is a licensed real estate salesperson in Arizona. On January 23, 2015, Tauscher filed a lawsuit against the Phoenix Association of Realtors (PAR), alleging that PAR did not comply with the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101–12213, and the Arizonans with Disabilities Act (AzDA), A.R.S. §§ 41-1492 to 41-1492.12. The district court granted summary judgment to PAR. We have jurisdiction under 28 U.S.C. § 1291, and we reverse the district court and remand for further proceedings.

I

Mark Tauscher has profound hearing loss, meaning that he cannot hear sounds that are less than 90 decibels loud (about as loud as a lawnmower).[1] According to an expert report in the record, Tauscher cannot hear in conversational settings, and he cannot use lip reading to understand speech. Nor can Tauscher effectively communicate with others by means of spoken words. Tauscher's primary and best form of communication is American Sign Language (ASL). Despite these limitations, Tauscher has obtained a bachelor's degree in biomedical photographic communication and a master's degree in business administration. He works full time for Sprint as a branch manger for product development and is also a licensed real estate salesperson in Arizona.

---

[1] On this appeal from a grant of summary judgment, we view the facts in the light most favorable to Mark Tauscher, the non-moving party. *White v. Pauly*, 137 S. Ct. 548, 550 (2017).

The Phoenix Association of Realtors is a trade association for real estate professionals who sell real property in the Phoenix metropolitan area.[2] PAR has twelve employees. Its membership has ranged from 7,600 to over 13,000 dues-paying members between 2008 and 2013. PAR offers a variety of programs and services for its members, including seminars that fulfill continuing education requirements set by the Arizona Department of Real Estate. Historically, PAR has charged only a nominal amount for these seminars, and the record indicates that the revenue from PAR's seminars is generally less than the seminars' costs.

Tauscher registered for a continuing education course that PAR scheduled for February 13 and 14, 2013. Tauscher's registration fee for the course was $20. In September 2012, Tauscher contacted Diane Scherer, PAR's Chief Executive Officer, to ask PAR to provide an ASL interpreter for the course. Scherer declined to provide an ASL interpreter and instead offered Tauscher the use of an FM Loop system that amplifies sound. Tauscher rejected this aid; he explained that such a system would not provide effective communication for him because of the extent of his hearing impairment. Scherer and Tauscher discussed the possibility of closed or open captioning, but the conversation ended without any agreement being reached.

In early February 2013, PAR responded to Tauscher's request for an auxiliary aid or service in a letter prepared by PAR's counsel. PAR rejected Tauscher's request for an ASL interpreter on the ground that PAR did not have the resources to provide an ASL interpreter and it would be an undue

---

[2] The legal name of the defendant is the Phoenix Board of Realtors, Inc., dba Phoenix Association of Realtors.

burden on the organization. Instead, the letter proposed three other measures. First, the letter stated that if Tauscher wanted "to attend the class and utilize lip reading, PAR [could] make the instructor available for questions at breaks and lunch." Second, the letter stated that "if [Tauscher knew] another real estate agent who [was] willing to sign for [him], PAR [would] provide the instruction and credits free to that person." Finally, PAR suggested that Tauscher could fulfill the continuing education requirements by taking online courses. Tauscher and PAR exchanged further correspondence in March but did not reach a resolution. PAR refunded Tauscher's registration fee.

In October 2014, Tauscher registered for another PAR course and asked PAR to provide an ASL interpreter. PAR again refused, proposing instead to "make the instructor available to you for questions at break and lunch." PAR subsequently cancelled Tauscher's registration for the course.

Tauscher brought a claim in district court alleging that PAR had violated the ADA and the Arizonans with Disabilities Act. The parties filed cross-motions for summary judgment, and the district court granted PAR's motion. The district court held that PAR's obligations under the ADA were satisfied when it engaged in a dialogue with Tauscher about his request for an ASL interpreter, and PAR was relieved from any further obligations under the ADA because Tauscher had refused to discuss any measures other than an ASL interpreter. The court subsequently denied Tauscher's motion for reconsideration, and Tauscher timely appealed.

## II

We review a district court's grant of summary judgment de novo. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013). Summary judgment is appropriate only if, taking the evidence and all reasonable inferences in the light most favorable to the non-moving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Furnace*, 705 F.3d at 1026. "An issue of material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (internal quotation marks omitted).

## A

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).[3] There is no dispute that Tauscher is an individual with a disability, *see* 42 U.S.C. § 12102(1), or

---

[3] Because the state provisions under the Arizonans with Disabilities Act (AzDA) mirror Title III of the ADA, *see* A.R.S. § 41-1492.02(A), and Arizona regulations expressly adopt 28 C.F.R. §§ 36.101–36.104, 36.301–36.311, to govern the AzDA, *see* Ariz. Admin. Code § R10-3-404, the same analysis applies to both the federal and state claims.

that PAR is a public accommodation and its seminars are places of public accommodation, *see id.* § 12189.**⁴**

Under the applicable regulations, a public accommodation has an obligation to "take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services."    28 C.F.R. § 36.303(a).    A public accommodation is relieved of this obligation only if it "can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense." *Id.*

A public accommodation must furnish "appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." *Id.* § 36.303(c)(1). The regulations define "auxiliary aids and services" to include qualified interpreters, "real-time computer-aided transcription services," "assistive listening devices," and a range of additional specified measures. *Id.* § 36.303(b)(1). The regulations also contain a catchall: any "other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing." *Id.* But the public accommodation may not "require an individual with a disability to bring another

---

**⁴** The regulations define "place of public accommodation" to mean "a facility operated by a private entity whose operations affect commerce and fall within at least one of" 12 specified categories, and define "public accommodation" to mean "a private entity that owns, leases (or leases to), or operates a place of public accommodation." 28 C.F.R. § 36.104. We use the term "public accommodation" to mean both a place of public accommodation and a person that owns, leases, or operates one.

individual to interpret for him or her." *Id.* § 36.303(c)(2). While "[a] public accommodation should consult with individuals with disabilities whenever possible to determine what type of auxiliary aid is needed to ensure effective communication," the regulations make clear that "the ultimate decision as to what measures to take rests with the public accommodation, provided that the method chosen results in effective communication." *Id.* § 36.303(c)(1)(ii).

B

On appeal, Tauscher argues that the district court erred in granting summary judgment in favor of PAR because there is a genuine issue of material fact as to whether PAR failed to provide him with "appropriate auxiliary aids and services" that would "ensure effective communication." According to Tauscher, PAR failed to discharge its ADA obligations because it failed to provide an ASL interpreter. The regulations do not require PAR to provide the specific aid or service requested by Tauscher; the regulations make clear that "the ultimate decision as to what measures to take rests with the public accommodation," so long as the measures provide effective communication. 28 C.F.R. § 36.303(c)(1)(ii). However, we agree with Tauscher that there is a genuine issue of material fact as to whether PAR offered Tauscher a means of communication that was effective.

PAR offered Tauscher several different measures over the course of its communication with him. Some of the measures offered by PAR clearly were not effective means of communication. PAR does not now dispute that the FM Loop system was not an effective means of communication for Tauscher. And several of the alternatives suggested by PAR do not constitute an effective means of communication

as a matter of law. Because the regulations expressly provide that a public accommodation may not require disabled individuals to provide their own interpreter, *see* 28 C.F.R. § 36.303(c)(2), PAR's suggestion that Tauscher bring a friend to the class to interpret for him does not meet PAR's obligations to provide effective communication. PAR also suggested that Tauscher take online classes, instead of participating in the live classroom setting. Because the regulations provide that disabled individuals should not be "segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services," *id.* § 36.303(a), this suggestion did not satisfy PAR's obligations.

PAR also offered to "make the instructor available for questions at breaks and lunch" if Tauscher wished to attend the session and rely on lipreading. Because Tauscher provided evidence that he was a poor lip reader, there is a genuine issue of material fact as to whether PAR's offer would have resulted in effective communication for Tauscher.

Finally, there is a genuine issue of material fact as to whether PAR offered to provide a captioning system. PAR argues on appeal that captioning would be an effective means of communication, but there is evidence in the record that PAR did not offer Tauscher the use of any captioning system. In her deposition, Scherer testified that PAR did not offer Tauscher any sort of closed-captioning option or court-reporter alternative, but rather had concluded that a computer-based captioning system would have been too costly, and therefore was not a feasible alternative. Tauscher also asserts that captioning would not be an effective means of communication because he is not proficient in English. Accordingly, we conclude that there is a genuine issue of

material fact as to whether PAR took the steps that were necessary to ensure effective communication with Tauscher.

C

We next consider PAR's argument that it satisfied its obligations under the ADA because Tauscher refused to engage in a discussion about alternative auxiliary aids other than an ASL interpreter. The district court relied on this ground in granting PAR's motion for summary judgment.

This argument is based on the ADA's requirements in the employment context. *See* Title I of the ADA, 42 U.S.C. §§ 12111–12117. In this context, a covered employer generally must provide a reasonable accommodation for an otherwise qualified employee or applicant with a disability, if such an accommodation is requested. 29 C.F.R. § 1630.2; *see also id.* Appendix. In order to identify an appropriate reasonable accommodation, the employer generally must "initiate an informal, interactive process with the individual with a disability in need of the accommodation." *Id.* § 1630.2(o)(3). "The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process." *Humphrey v. Mem. Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001).

The ADA does not make this "interactive process" requirement applicable to public accommodations and services. *See* Title III of the ADA, 42 U.S.C. §§ 12181–12189. Title III and its implementing regulations make no mention of an "interactive process" that mirrors the process required in the employment context. Although the

regulations suggest that a public accommodation "should consult with individuals with disabilities whenever possible to determine what type of auxiliary aid is needed to ensure effective communication," the public accommodation itself is independently responsible for making the "ultimate decision as to what measures to take."      28 C.F.R. § 36.303(c)(1)(ii).  Nor is there any basis for holding that a public accommodation is relieved of its obligation to provide appropriate auxiliary aids and services if the individual requesting such measures fails to engage in a good faith exploration of what measures would provide effective communication.  PAR does not cite any precedent on point, and we are aware of none.  *Cf. Koester v. Young Men's Christian Ass'n of Greater St. Louis*, 855 F.3d 908, 912 (8th Cir. 2017) (assuming for purposes of argument that the interactive process was applicable to a Title III case, but noting its "hefty" skepticism that such concepts did apply in this context).[5]  Accordingly, we conclude that PAR was not discharged of its obligation to ensure effective communication merely because Tauscher did not engage in further discussion with PAR regarding measures other than an ASL interpreter.

D

PAR also argues that, even if it did not offer an auxiliary aid or service that would have resulted in effective communication for Tauscher, it is entitled to judgment as a matter of law because it demonstrated that any additional

---

[5] PAR also cites *Vinson v. Thomas*, 288 F.3d 1145 (9th Cir. 2002), to support its claim that the interactive process is applicable in the Title III context, but *Vinson* construed Title II of the ADA (covering public employment), not Title III, *see id.* at 1148.

measure (such as an ASL interpreter or closed captioning) would have resulted in an undue burden on PAR. *See* 28 C.F.R. § 36.303(a); *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 675 (9th Cir. 2010).

The ADA regulations define "undue burden" to mean a "significant difficulty or expense," taking into account a range of factors relating to the cost of the action compared to the financial resources of the public accommodation. 28 C.F.R. § 36.104 (enumerating factors to consider in the undue burden analysis). A determination as to whether an action would place an undue burden on a public accommodation requires a holistic analysis of the financial resources available to the public accommodation, including its profits and operating expenses, as well as the nature and frequency of the expense. *See id.* The Eighth Circuit provided an example of an undue burden analysis in its consideration of whether a district court erred in holding, after a bench trial, that a daycare center was not required to provide a one-on-one caregiver to a disabled child. *Roberts v. KinderCare Learning Ctrs., Inc.*, 86 F.3d 844, 846–47 (8th Cir. 1996). The Eighth Circuit reasoned that the daycare center "pays a full-time aid about $200 per week," while the tuition for the child was only $105 per week, meaning that the daycare center would suffer a $95 per week loss. *Id.* at 846. The court concluded that this was "a substantial financial burden when considered in the light of the [daycare center's] $9,600 per month operating income." *Id.* The court declined to consider the financial resources of the daycare center's parent corporation, because the daycare center was "responsible for remaining independently profitable and cannot rely on any resources from" its parent or affiliates. *Id.* at 846–47. The Eighth Circuit concluded that because the requested measure would impose an undue burden on the

daycare center, the measure was not reasonable within the meaning of the ADA. *Id.* at 847. The Eighth Circuit therefore affirmed the district court's judgment. *Id.*

In this case, PAR argues that it charges only a $20 registration fee for its courses, but the cost of an ASL interpreter for the February 2013 course would have been between $1,680 and $3,360. PAR asserts it already loses money in providing these continuing education courses, and the loss of an additional $1,560 would be a "significant difficulty or expense." 28 C.F.R. § 36.104. Further, PAR states that it suffered a net loss of $8,109.88 in February 2013, and does not have a parent corporation that can contribute to PAR's overall financial resources. Therefore, PAR argues that under *KinderCare*, we should conclude as a matter of law that providing an ASL interpreter would be an undue burden. In response, Tauscher argues that the cost of an ASL interpreter would not be an undue burden on PAR because PAR had sufficient funds to cover that cost. Specifically, Tauscher points to evidence in the record that the value of PAR's assets in cash or cash equivalents was $839,606 at the end of fiscal year 2014 and $1,099,152 at the end of fiscal year 2013, although the record does not include information about PAR's liabilities during those years.

The question whether providing an ASL interpreter would result in an undue burden raises complex issues that the district court is better able to address in the first instance. *See Ariz. Libertarian Party, Inc. v. Bayless*, 351 F.3d 1277, 1283 (9th Cir. 2003). The district court did not consider whether Tauscher's evidence regarding PAR's overall financial resources raised a genuine issue of material fact on this issue. Accordingly, we think it is prudent to allow the district court to consider this issue in the first instance.

## III

In sum, PAR is not entitled to summary judgment because engaging in dialogue with Tauscher did not satisfy its obligations under the ADA. Moreover, there is a genuine issue of material fact as to whether PAR offered an auxiliary aid or service that would provide effective communication to Tauscher.[6] We vacate the district court's grant of summary judgment to PAR and remand for proceedings consistent with this opinion.

**VACATED AND REMANDED.**

---

[6] To the extent Tauscher argues that the district court erred by denying his motion for summary judgment because PAR failed to satisfy its obligations under Title III as a matter of law, we reject that argument. Viewing the record in the light most favorable to PAR, there is a genuine issue of material fact regarding whether PAR offered an auxiliary aid or service that would result in effective communication for Tauscher. Moreover, for the reasons we have explained, the district court should have the opportunity to consider in the first instance whether providing an ASL interpreter would have resulted in an undue burden on PAR.