**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DANIEL LOPEZ,

*Plaintiff-Appellant*,

v.

CATALINA CHANNEL EXPRESS, INC., a California Corporation; DOES, 1–10,

*Defendants-Appellees.*

No. 19-55136

D.C. No. 2:18-cv-03232-SVW-AS

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted May 7, 2020
Pasadena, California

Filed September 9, 2020

Before: Mary H. Murguia and Morgan Christen, Circuit Judges, and Alvin K. Hellerstein,[*] District Judge.

Opinion by Judge Murguia

---

[*] The Honorable Alvin K. Hellerstein, United States District Judge for the Southern District of New York, sitting by designation.

## SUMMARY[**]

### Americans with Disabilities Act

The panel reversed the district court's grant of summary judgment in favor of defendant Catalina Channel Express, Inc., and remanded, in an action under Title III of the Americans with Disabilities Act.

Plaintiff alleged that he was unable to use the restroom aboard the passenger vessel Jet Cat Express because the restroom's door was too narrow to allow his wheelchair to enter, and he therefore was denied public accommodations because of his disability.

The panel affirmed the district court's conclusion that plaintiff failed to meet his initial burden of plausibly showing that widening the Jet Cat Express's restroom door was "readily achievable."  In doing so, the panel joined the Second Circuit and adopted a burden-shifting framework whereby plaintiffs have the initial burden at summary judgment of plausibly showing that the cost of removing an architectural barrier does not exceed the benefits under the particular circumstances.  The defendant then bears the ultimate burden of persuasion that barrier removal is not readily achievable.  The panel distinguished *Molski v. Foley Estates Vineyard & Winery, LLC*, 531 F.3d 1043 (9th Cir. 2008), which places the initial burden on the defendant in a case of an architectural barrier in a historic facility.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel nonetheless reversed the district court's grant of summary judgment because the district court did not evaluate whether Catalina made the restroom available to plaintiff through "alternative methods." The panel instructed that on remand, the district court should determine in the first instance whether there was sufficient evidence that Catalina made the restroom "available through alternative methods" pursuant to 42 U.S.C. § 12182(b)(2)(A)(v).

## COUNSEL

Russell Handy (argued) and Dennis Price, Center for Disability Access, San Diego, California, for Plaintiff-Appellant.

Douglas J. Collodel (argued) and Alison K. Beanum, Clyde & Co. US LLP, Los Angeles, California, for Defendants-Appellees.

## OPINION

MURGUIA, Circuit Judge:

Daniel Lopez is confined to a wheelchair due to a disability and he alleges that he was unable to use the restroom aboard the Jet Cat Express, a passenger vessel sailing between Long Beach and Santa Catalina Island, California, because the restroom's door was too narrow to allow his wheelchair to enter. Lopez sued Catalina Channel Express, Inc. ("Catalina"), which owns and operates the vessel, under the Americans with Disabilities Act of 1990 ("ADA") and California's Unruh Civil Rights Act ("Unruh

Act") for failing to widen the vessel's restroom door. The district court denied Lopez's motion for summary judgment and instead granted summary judgment to Catalina on Lopez's ADA claim. The district court also refused to exercise supplemental jurisdiction over Lopez's Unruh Act claim.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand.

## I.  Factual and Procedural Background

Daniel Lopez is a T-10 paraplegic, which means he is unable to walk and is dependent on a wheelchair for mobility. In April 2017, Lopez returned from Catalina Island to Long Beach on the Jet Cat Express, a passenger vessel owned and operated by Catalina. While aboard, Lopez soiled himself because the restroom's door was too narrow for his wheelchair to enter.

Catalina has not altered the restroom in the Jet Cat Express since it was built in 2001. According to Tony Ross, Catalina's Vice President of Vessel Engineering, no passenger—other than Lopez—has ever reported any difficulty accessing the restroom. Ross also testified that the sliding "pocket door" creates a 26-inch-wide entryway when fully opened and the door cannot be widened because its handle is placed three inches from the outer edge of the door.

According to Ross, there are two reasons why widening the restroom door is not readily achievable. First, "installing a different type of handle at the outer edge of the 'pocket door' . . . may make it more likely that passengers' hands would be injured in the doorway when closing the door, due to the constant movement of the vessel." Second, Catalina "cannot structurally alter the restroom without negatively

impacting the stability of the vessel . . . [which] is a threat to the safety of navigation." Specifically, Ross explained:

> [M]odifications and alterations to a vessel can negatively impact the stability of the vessel in many ways. For example, here, in order to expand the doorway of the disabled-accessible restroom on the Jet Cat Express, the structure of the restroom itself would need to be expanded which, in turn, would impact the structure of the adjoining restroom. As walls shift, the vessel's overall weight changes. These changes may cause the overall center of gravity ("COG") of the vessel to move, and the freeboard to be reduced. *These two factors affect the stability of a vessel.*
>
> . . . Simply put, as the COG moves and the amount of freeboard becomes lower, the vessel becomes more susceptible to unstable situations.

In other words, Ross declared that widening the vessel's restroom door is not readily achievable.

Lopez sued Catalina alleging violations of the ADA, 42 U.S.C. §§ 12101–12213, and the Unruh Act, Cal. Civ. Code § 51. The district court bifurcated Lopez's ADA claims from his state law claim, and after some discovery, granted summary judgment to Catalina on Lopez's ADA claims and declined to exercise supplemental jurisdiction over his Unruh Act claim. Lopez timely appealed.

## II. Standard of Review

We review a district court's grant of summary judgment de novo. *Tauscher v. Phx. Bd. of Realtors, Inc.*, 931 F.3d 959, 962 (9th Cir. 2019) (citing *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013)). Summary judgment is appropriate only if, taking the evidence and all reasonable inferences in the light most favorable to the non-moving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "An issue of material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Tauscher*, 931 F.3d at 962 (quoting *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)).

"The interpretation of [the ADA] is a question of law subject to de novo review." *Molski v. Foley Estates Vineyard & Winery, LLC*, 531 F.3d 1043, 1046 (9th Cir. 2008) (alteration in original) (quoting *Barden v. City of Sacramento*, 292 F.3d 1073, 1075 (9th Cir. 2002)). We also review the district court's allocation of the burden of proof de novo. *Id.* (citing *Ferrari, Alvarez, Olsen & Ottoboni v. Home Ins. Co.*, 940 F.2d 550, 555 (9th Cir. 1991)).

## III.    Analysis

Congress enacted the ADA to address discrimination against individuals with disabilities. 42 U.S.C. §§ 12101(b)(1)–(4). Title III, at issue in this case, provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." *Id.* § 12182(a). In simpler

terms, owners of "places of public accommodation"—which include a passenger vessel like the Jet Cat Express—have a duty to make sure that individuals with disabilities can fully enjoy the facilities.[1]

To prevail on a Title III discrimination claim, Lopez must establish that: (1) he is disabled within the meaning of the ADA; (2) Catalina is a private entity that owns, leases, or operates a place of public accommodation; and (3) Catalina discriminated against him by denying him public accommodations because of his disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. §§ 12182(a)–(b)). Here, the first two elements of Lopez's discrimination claim are met because neither party disputes that Lopez is disabled, *see* 42 U.S.C. § 12102, or that the Jet Cat Express is a place of public accommodation within the meaning of the ADA, *see id.* § 12181(7); 28 C.F.R. § 36.104. Only the third element is at issue: whether the inaccessibility of the restroom on the Jet Cat Express constitutes discrimination under the ADA. *See Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1044 (9th Cir. 2013) ("There is no dispute that [the plaintiff] is disabled, [or] that the restaurant is covered by the ADA . . . . The only question is whether any barriers interfered with [the plaintiff's] ability 'to participate in or benefit from the goods, services, facilities, privileges, advantages, or

---

[1] Catalina argues that the ADA does not apply to Lopez's claims because its operations do not affect commerce for the purposes of 42 U.S.C. § 12184. Section 12184 prohibits discrimination "in specified public transportation services provided by private entities." *Id.* But Lopez's claims arise under 42 U.S.C. § 12182, not § 12184, and § 12182 prohibits discrimination "by public accommodations." Catalina admitted in its answer that it was a place of public accommodation, and this admission is binding. *Am. Title Ins. Co. v. Lacelaw Corp.*, 961 F.2d 224, 226 (9th Cir. 1988).

accommodations' of the restaurant." (quoting *Chapman v. Pier 1 Imps. (U.S.), Inc.* ("*Chapman I*"), 631 F.3d 939, 945 (9th Cir. 2011) (en banc))).  Lopez alleges that Catalina's failure to widen the restroom door—an "architectural barrier" under the statute—prevented him from fully enjoying the facilities aboard the Jet Cat Express.[2]

## A. Removal of Architectural Barriers Under the ADA

Discrimination under Title III of the ADA specifically includes "a failure to *remove* architectural barriers . . . in existing facilities . . . where such removal is *readily achievable*."  42 U.S.C. § 12182(b)(2)(A)(iv) (emphases added).  In addition, even if "an entity can demonstrate that the removal of a barrier . . . is *not* readily achievable," the entity is still liable under the ADA if it fails to "make [its] goods, services, facilities, privileges, advantages, or accommodations available through alternative methods" so long as "such methods are *readily achievable*."  *Id.* § 12182(b)(2)(A)(v) (emphases added).  The ADA defines the phrase "readily achievable" as "easily accomplishable and able to be carried out without much difficulty or expense."  *Id.* § 12181(9).

Examples of architectural barriers that are subject to the ADA include slopes and cross-slopes in a parking lot that are too steep (more than two percent incline), *Kohler v. Bed Bath & Beyond of Cal., LLC*, 780 F.3d 1260, 1262 (9th Cir. 2015);

---

[2] Lopez's complaint also raises claims that Catalina failed to make "reasonable modifications in policies, practices, or procedures" and "alterations."  42 U.S.C. §§ 12182(b)(2)(A)(ii), 12183(a)(2).  However, he moved for summary judgment only on his claim that Catalina did not remove an architectural barrier, in violation of §§ 12182(b)(2)(A)(iv)–(v).

aisles in a store that are not wide enough for wheelchairs, *Chapman v. Pier 1 Imps. (U.S.), Inc.* ("*Chapman II*"), 779 F.3d 1001, 1005 (9th Cir. 2015); seating in a restaurant that does not accommodate wheelchairs; *Strong*, 724 F.3d at 1044; soap dispensers and hand dryers that are mounted too high (more than forty inches from the floor), *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 n.5 (9th Cir. 2011); and a bar that is too high to drink from, *Jankey v. Poop Deck*, 537 F.3d 1122, 1123 (9th Cir. 2008).

Accordingly, to prevail on his discrimination claim, Lopez must establish either: (1) that Catalina failed to alter the restroom door when doing so was readily achievable; or (2) even if the alteration was not readily achievable, that Catalina could have made the restroom available to Lopez through alternative methods without much difficulty or expense. 42 U.S.C. §§ 12182(b)(2)(A)(iv)–(v). We address each of these alleged bases of liability in turn.

## B.  Readily Achievable

The district court granted summary judgment to Catalina largely because it concluded that Lopez bore—and failed to carry—the burden of establishing that altering the Jet Cat Express's restroom door was "readily achievable." Our court has not decided which party bears the burden to establish that removal of an architectural barrier is or is not readily achievable. The district court recognized this was an undecided question and decided to "follow[] the lead of 'the overwhelming majority of federal courts that apply the burden-shifting framework of'" the Tenth Circuit's decision in *Colorado Cross Disability Coalition v. Hermanson Family Limited Partnership.*, 264 F.3d 999 (10th Cir. 2001). In affirming the district court's conclusion that Lopez failed to meet his initial burden, we join the Second Circuit and adopt a burden-shifting framework that slightly differs from

the Tenth Circuit's framework in *Colorado Cross*.   Under the Second Circuit's approach, plaintiffs have the initial burden at summary judgment of *plausibly showing* that the cost of removing an architectural barrier does not exceed the benefits under the particular circumstances.  *See Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 373 (2d Cir. 2008).

Title III of the ADA is silent as to who bears the burden of proving at summary judgment that removal of an architectural barrier is, or is not, readily achievable.  The Tenth Circuit was the first court of appeals to articulate a two-part burden-shifting framework for evaluating whether removing an architectural barrier is "readily achievable" under the ADA.  *Colo. Cross*, 264 F.3d at 1002–07.  Under *Colorado Cross*, the plaintiff "must initially present evidence tending to show that the suggested method of barrier removal is readily achievable under the particular circumstances."  *Id.* at 1002.  If the plaintiff meets that initial burden, the defendant "then bears the ultimate burden of persuasion that barrier removal is *not* readily achievable." *Id.* at 1002–03 (emphasis added).   In other words, the defendant "bears the *ultimate* burden of persuasion regarding its *affirmative defense* that a suggested method of barrier removal is not readily achievable."   *Id.* at 1006 (emphasis added).

The Eighth and Eleventh Circuits have adopted *Colorado Cross*'s burden-shifting framework for evaluating barrier removal claims.  *See Wright v. RL Liquor*, 887 F.3d 361, 364 (8th Cir. 2018) ("[T]his court holds that the district court properly required [the plaintiff] to initially present evidence tending to show that the suggested method of barrier removal was readily achievable under the circumstances."); *Gathright-Dietrich v. Atlanta Landmarks, Inc.*, 452 F.3d 1269, 1274 (11th Cir. 2006) ("The district

court did not err in following the burden of proof enunciated in *Colorado Cross*, and we adopt that burden shifting framework for the reasons articulated by the *Colorado Cross* court.").[3]   The Second Circuit tweaked the test slightly, requiring plaintiffs to first "articulate a *plausible proposal* for barrier removal"   and recognizing that "the defendant may counter the plaintiff's showing by meeting its own burden of persuasion and establishing that the costs of a plaintiff's proposal would in fact exceed the benefits." *Roberts*, 542 F.3d at 373 (emphasis added).   Importantly, while it is clear that the defendant bears the ultimate burden of proving the affirmative defense, all of our sister circuits have placed the initial burden of proof on the plaintiff.  This makes sense because at a minimum, at the outset, a plaintiff must make clear what accommodation is needed, and disability accommodations can be idiosyncratic.

Indeed, placing the initial burden on the plaintiff of plausibly showing how removal of an architectural barrier is readily achievable under the circumstances is sensible for several reasons.  First, subsections 12182(b)(2)(A)(iv) and (v)—which, read together, require the removal of an architectural barrier unless such removal is not readily achievable—place the ultimate burden on the *defendant* to

---

[3] In the absence of direction from us, most district courts in our circuit have also followed *Colorado Cross*, assigning plaintiffs the initial burden of establishing that removing an architectural barrier is readily achievable.  *See, e.g.*, *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1010–11 (C.D. Cal. 2014); *Paulsen v. PS Bus. Parks, LP*, No. C10-1031, 2011 WL 3419894, at *2 (W.D. Wash. Aug. 4, 2011); *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 854 (N.D. Cal. 2011); *Vesecky v. Garick, Inc.*, No. 07-1173, 2008 WL 4446714, at *3 (D. Ariz. Sept. 30, 2008); *Wilson v. Pier 1 Imps. (US), Inc.*, 439 F. Supp. 2d 1054, 1067 (E.D. Cal. 2006); *Hubbard v. Rite Aid Corp.*, 433 F. Supp. 2d 1150, 1159 (S.D. Cal. 2006).

prove the *affirmative defense* that removal of an architectural barrier is not readily achievable. *Colo. Cross*, 264 F.3d at 1002. Subsection (iv) starts by requiring defendants to remove architectural barriers if that removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Subsection (v), in turn, offers the defendant an opportunity to avoid liability by "demonstrat[ing] that the removal of a barrier under clause (iv) is *not* readily achievable[.]" *Id.* § 12182(b)(2)(A)(v) (emphasis added). In other words, *only if* the plaintiff first makes a plausible showing that the barrier removal *is* readily achievable, does the defendant then have to negate that showing and prove that the removal is *not* readily achievable. This is consistent with the ADA's mandate that an entity must remove an architectural barrier *unless* it can show that removal is *not* readily achievable. *Colo. Cross*, 264 F.3d at 1002.

Second, applying a burden-shifting framework in this context is consistent with our application of burden-shifting frameworks to other similarly worded subsections of Title III. For example, the first clause of subsection 12182(b)(2)(A)(ii) requires defendants to make reasonable modifications to their policies, practices, or procedures to allow individuals with disabilities to enjoy their goods and services. 42 U.S.C. § 12182(b)(2)(A)(ii). The second clause of subsection (ii), in turn, offers defendants an opportunity to avoid liability by "demonstrat[ing] that making such modifications *would fundamentally alter the nature* of such goods [or] services." 42 U.S.C. § 12182(b)(2)(A)(ii) (emphases added). In *Lentini v. California Center for the Arts*, we endorsed the Fifth Circuit's holding that, under subsection (ii), the plaintiff must initially prove that a modification was requested and that the requested modification was reasonable. 370 F.3d 837, 845 (9th Cir. 2004) (citing *Johnson v. Gambrinus Co./Spoetzl Brewery*,

116 F.3d 1052, 1059 (5th Cir. 1997)). If the plaintiff meets that initial burden, then the defendant bears the ultimate burden of persuasion that the requested modification would fundamentally alter the nature of the public accommodation. *See id.* More recently, in *Karczewski v. DCH Mission Valley LLC*, we confirmed that to prevail on a claim under subsection (ii) the plaintiff must first establish a prima facie case that the defendant "fail[ed] to make a requested reasonable modification that was . . . necessary to accommodate the plaintiff's disability." 862 F.3d 1006, 1010 (9th Cir. 2017) (quoting *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004)). Only then must the defendant "make the requested modification unless it proves that doing so would alter the fundamental nature of its business." *Id.*

Finally, a burden-shifting approach is congruent with how we adjudicate employment claims under Title I of the ADA. For example, under Title I, a disabled employee seeking an employment accommodation under 42 U.S.C. § 12112(b)(5)(A)–(B)[4] must initially prove that the

---

[4] Discrimination under these subsections includes, among other things,

> (A) not making *reasonable accommodations* to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, *unless such covered entity can demonstrate that the accommodation would impose an undue hardship* on the operation of the business of such covered entity; or (B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to

accommodation "seems reasonable on its face[.]" *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002). If the employee meets that initial burden, then the defendant "must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *Id.* at 402. Similarly, when it comes to disparate-treatment employment claims under the ADA, the Supreme Court has clarified that once an employee makes "a prima facie showing of discrimination, the next question . . . [is] whether [the employer] offered a legitimate, nondiscriminatory reason for its actions so as to demonstrate that its actions were not motivated by [the employee's] disability." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 55 (2003).

Lopez argues that, under our decision in *Molski*, Catalina bears the initial burden of establishing that removal of the restroom door is not readily achievable. 531 F.3d at 1043. In *Molski*, a paraplegic man sued a winery because it refused to remove external architectural barriers that prevented wheelchair access to its historic wine-tasting room. *Id.* at 1045–46. We held that, under those circumstances, the defendant had the initial burden of proving that removal of the barriers was not readily achievable because federal regulations "do[] not place that burden on the party advocating for remedial measures," but "on the party with the best access to information *regarding the historical significance of the building*." *Id.* at 1048 (emphasis added). Indeed, 28 C.F.R. § 36.405 requires qualified historic buildings to "comply to the maximum extent feasible with"

---

make *reasonable accommodation* to the physical or mental impairments of the employee or applicant."

42 U.S.C. § 12112(b)(5) (emphases added).

the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities, § 4.1.7 ("§ 4.1.7"). In turn, § 4.1.7 requires entities who own historic places of public accommodation to "consult with the State Historic Preservation Officer" if they "believe[] that compliance with the requirements would threaten or destroy the historic significance of the building." Therefore, the *Molski* court concluded "§ 4.1.7 counsels in favor of placing the burden of production on the defendant." *Molski*, 531 F.3d at 1048.

*Molski* applies only to the removal of architectural barriers "in historic facilities." *Id.* Notably, the plaintiff had identified the nature of the accommodation requested. We reasoned in *Molski* that:

> The defendant sought the *historical designation* in this case. Thus, the defendant possesses the best understanding of the circumstances under which that designation might be threatened. The defendant is also in the best position to discuss the matter with the Santa Barbara County Historic Landmarks Advisory Commission and to request an opinion on proposed methods of barrier removal. As a result, the defendant is in a better position to introduce, as part of its affirmative defense, detailed evidence and expert testimony concerning whether the *historic significance* of a structure would be threatened or destroyed by the proposed barrier removal plan.

*Id.* (emphases added). Here, by contrast, the Jet Cat Express is not a historic facility. Catalina need not consult with a historic preservation entity on proposed methods of barrier

removal to evaluate how the alteration of the vessel's restroom door might threaten the vessel's historic significance.  *Molski* only applies in cases that involve removal of architectural barriers to historic facilities—it is the exception, not the rule.[5]

Although every circuit applies a burden-shifting framework when addressing claims for removal of architectural barriers at summary judgment, the initial burden placed on plaintiffs varies.  For example, the Tenth Circuit requires plaintiffs to provide "precise cost estimates" and "a specific design" regarding their proposed accommodation, *Colo. Cross*, 264 F.3d at 1009, whereas the Second Circuit requires plaintiffs only to "articulate a plausible proposal for barrier removal, 'the costs of which, facially, do not clearly exceed its benefits,'"  *Roberts*, 542 F.3d at 373 (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)).  We believe that the

---

[5] Unsurprisingly, most district courts in our circuit have declined to apply *Molski* when a case does not involve a historic facility.  *See, e.g.*, *Vogel*, 992 F. Supp. 2d at 1011 n. 35 ("*Molski* appears to be limited to the historic building context . . . .  The decision does not address non-historic building compliance and is not controlling in this case."); *Vesecky*, 2018 WL 4446714, at *3 ("[U]ntil the Ninth Circuit provides additional and specific instruction to the lower courts this Court will follow the overwhelming majority of federal courts that apply the burden-shifting framework of [*Colorado*] *Cross*, specifically in cases where a historic building is not at issue."); *Ridola v. Chao*, No. 16-CV-02246-BLF, 2018 WL 2287668, at *10 (N.D. Cal. May 18, 2018) (same); *Gonzalez v. Riverrock Properties, LLC*, No. 2:14-CV-2362-TLN-EFB, 2016 WL 3267116, at *3 (E.D. Cal. June 14, 2016) (same); *Paulsen*, 2011 WL 3419894, at *2 (same); *but see Rodriguez*, 2012 WL 3538014, at *11 ("While it is true that [*Molski*] is, by its terms, limited to cases where the historical exception is asserted, its concerns regarding the availability of evidence have equal weight when defendant claims that remediation would be too costly or impractical.").

Second Circuit's approach is most sensible because otherwise we would be asking too much of plaintiffs, especially considering that defendants have more knowledge and information regarding their own facilities, which allows them to quickly and easily counter implausible barrier-removal proposals. *See Roberts*, 542 F.3d at 373 ("Neither the estimates nor the proposal are required to be exact or detailed, for the defendant may counter the plaintiff's showing by meeting its own burden of persuasion and establishing that the costs of a plaintiff's proposal would in fact exceed the benefits."). Accordingly, we hold that to satisfy their initial burden, ADA plaintiffs must plausibly show how the cost of removing the architectural barrier at issue does not exceed the benefits under the circumstances.

Additionally, the ADA requires courts to consider four enumerated factors when "determining whether an action is readily achievable," including:

> (A) the nature and cost of the action needed [];
>
> (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;
>
> (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

> (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12181(9)(A)–(D).   Lopez argues that ADA plaintiffs will not have the information required by § 12181(9), but under the test we adopt, plaintiffs are not required to address in detail each of the four factors to meet their initial burden of plausibly explaining why it is readily achievable to remove an architectural barrier.  If the plaintiff makes   a   plausible   showing   that   the   requested accommodation is readily achievable, the burden shifts to the defendant to counter the plaintiff's initial showing, and at that point the district court is required under the statute to weigh each of the § 12181(9) factors to determine whether removal of the architectural barrier is readily achievable or not.  Therefore, it is in plaintiffs' best interest to submit as much evidence as possible pertaining to each of the § 12181(9) factors in their initial barrier-removal proposal, even if it is not required to satisfy their initial burden of plausibly showing how the costs of removal outweigh the benefits.   Otherwise, plaintiffs risk meeting their initial burden but failing to ultimately prevail on summary judgment.[6]

---

[6] *See e.g.*, *Garibay v. Rodriguez*, No. CV 18-09187, 2019 WL 8060795, at \*4 (C.D. Cal. Dec. 19, 2019); *Lopez v. Lopez*, No. CV 18-6473, 2019 WL 7905742, at \*6 (C.D. Cal. Oct. 17, 2019); *Mannick v. Kaiser Found. Health Plan, Inc.*, No. C 03-5905, 2006 WL 1626909, at \*12 (N.D. Cal. June 9, 2006).

In this case, the district court correctly found that Lopez not only failed to address the § 12181(9) factors, but that he also did not meet his initial burden of plausibly showing how the cost of widening the Jet Cat Express's restroom door does not exceed the benefits.  The only evidence that Lopez submitted to that effect was a two-page declaration from Corey Taylor, a private investigator who conducted "an investigation" consisting of "taking photographs and measurements of the restroom at the Catalina Express Jet Cat Express."  The extent of Taylor's testimony is that the restroom pocket door at issue in this case "opens only 25 inches in width" but "could have opened 34 inches, if not blocked by the metal pin, located on the top of the sliding door."  Taylor does not estimate why he is qualified to opine on this issue, or even how he reached his conclusion.  Taylor also attaches three photographs of the door, none of which display any measurements, and one of which, construed generously, seems to depict what looks like a "pin" on the pocket door's top rail.  The district court correctly concluded that, even if Taylor's statement that the pin is blocking the door from opening more widely is true, it "only identifies the problem; it does not bear on the question of whether remediating the problem is readily achievable."  Nowhere does Lopez explain how much he thinks widening the door would cost, let alone why that cost does not exceed the potential benefits of a wider door.  Therefore, Taylor's declaration is patently insufficient for Lopez to meet his initial burden.

Accordingly, we affirm the district court's conclusion that Lopez failed to meet his initial burden of plausibly showing that the costs of widening the Jet Cat Express's restroom door do not exceed the benefits such that widening the door was shown to be "readily achievable."

## C.  Alternative Methods

Even if widening the Jet Cat Express's restroom door was not readily achievable, Lopez could still prevail on his Title III discrimination claim if he establishes that Catalina chose not to make the restroom available to him even though it could have done so through alternative methods without much difficulty or expense. 42 U.S.C. §§ 12182(b)(2)(A)(v).

On appeal, Catalina argues that it offers narrow wheelchairs to individuals with disabilities who need to use the restroom on the Jet Cat Express. Lopez does not dispute that evidence; rather, he argues that he was never offered a different wheelchair that would fit through the restroom's door. Lopez did testify, however, that he rejected Catalina's offer to transfer him from his wheelchair to the toilet directly: "I'm a hefty guy, and I've had bad experiences with people trying to help me. They assume they can. I've been dropped, so I wouldn't." It is therefore unclear whether Lopez would have accepted an offer to use a narrower wheelchair or whether an offer to transfer him directly to the toilet would satisfy Catalina's duty to offer "alternative methods" to use the restroom. In any case, the district court did not evaluate whether Catalina made the restroom available to Lopez through alternative methods.[7]

---

[7] The district court did address Lopez's alternative argument that "even if 'full barrier removal' is not readily achievable, readily achievable partial accommodations must still be made." This appears to be a different argument having to do with Catalina's duty to remove architectural barriers that is unrelated to Catalina's duty to make the restroom available to Lopez through "alternative methods." 42 U.S.C. §§ 12182(b)(2)(A)(v).

Accordingly, we reverse the district court's grant of summary judgment to Catalina and remand for the district court to determine in the first instance whether there is sufficient evidence that Catalina made the restroom "available through alternative methods" pursuant to § 12182(b)(2)(A)(v).

## IV.    Conclusion

We affirm the district court's conclusion that Lopez failed to meet his initial burden of plausibly showing that widening the Jet Cat Express's restroom door was "readily achievable" under 42 U.S.C. §§ 12182(b)(2)(A)(iv).    In doing so, we adopt a burden-shifting framework whereby plaintiffs have the initial burden at summary judgment of plausibly showing that the cost of removing an architectural barrier does not exceed the benefits under the particular circumstances.    The defendant then bears the ultimate burden of persuasion that barrier removal is not readily achievable.

We reverse the district court's grant of summary judgment, however, because the district court did not evaluate whether Catalina made the restroom available to Lopez through "alternative methods."    On remand, the district court should determine in the first instance whether there is sufficient evidence that Catalina made the restroom "available through alternative methods" pursuant to § 12182(b)(2)(A)(v).

**REVERSED and REMANDED with instructions.** Each party shall bear its own costs.