**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

TARA GILBERT; CYNTHIA
KEMPLIN; DARYL GILBERT;
STEVEN GILBERT, Successors in
Interest,

*Plaintiffs - Appellees*,

v.

7-ELEVEN, INC., Doing business as
7-Eleven #23615; JATINDER
BRAR, Doing business as 7-Eleven
#23615; JATINDER SINGH BRAR,
Doing business as 7-Eleven
#23615; MIN-CHING HO, Trustee
of the HO LIVING TRUST dated
October 26, 1991; KATHLEEN A.
HO; I-CHUNG HO, Trustee of the
HO LIVING TRUST dated October
26, 1991,

*Defendant - Appellant*.

No. 23-4045

D.C. No.
2:21-cv-01984-
WBS-KJN

OPINION

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, District Judge, Presiding

Argued and Submitted October 23, 2024
San Francisco, California

Filed October 24, 2025

Before: Richard R. Clifton, Jennifer Sung, and Gabriel P.
Sanchez, Circuit Judges.

Opinion by Judge Sung

## SUMMARY[*]

### California Unruh Civil Rights Act / Americans with Disabilities Act

The panel affirmed the district court's judgment after a bench trial awarding statutory damages to Darren Gilbert on his claim under California's Unruh Civil Rights Act against 7-Eleven, Inc.

Gilbert, who uses a prosthetic leg and a wheelchair for mobility, brought claims under the Unruh Act and Title III of the Americans with Disabilities Act. He asserted that 7-Eleven discriminated against him in violation of the ADA by failing to remove architectural barriers where such removal was readily achievable and by denying him full and equal enjoyment of its store based on his disability. After Gilbert filed this lawsuit, 7-Eleven remodeled the store's parking lot and entryway, resulting in an ADA-compliant van-

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

accessible parking stall, access aisle, curb ramp, and entry walkway. After a bench trial, the district court concluded that during Gilbert's visits to the store, he personally encountered a lack of accessible route of travel from the designated accessible parking to the store's entrance because of several different violations of the ADA Accessibility Guidelines. The district court concluded that, due to 7-Eleven's voluntary removal of the challenged barriers, Gilbert's claim for injunctive relief under the ADA was moot. But, because a violation of the ADA constitutes a violation of the Unruh Act, the district court awarded Gilbert $4,000 in statutory damages under the Unruh Act.

The panel held that Title III of the ADA requires removal of an architectural barrier where such removal is readily achievable. The plaintiff bears the initial burden of articulating a plausible proposal for barrier removal, the costs of which, facially, do not clearly exceed its benefits. But the defendant bears the ultimate burden of persuasion, that is, of proving that barrier removal is not readily achievable. The panel held that, even though Gilbert did not provide evidence to satisfy his initial burden, 7-Eleven's voluntary remodeling demonstrated that barrier removal was readily achievable.

7-Eleven did not dispute the district court's conclusion that Gilbert personally encountered barriers, but it contended that he was further required to prove that his experience at the store while ambulating with a prosthetic leg was different than that of any other able-bodied person in order to demonstrate that the barriers related to his particular disability. The panel held that no such evidentiary burden exists.

Rejecting 7-Eleven's argument that Gilbert lacked standing to bring an Unruh Act claim, the panel held that, under California law, an individual who personally encounters an ADA violation while transacting with a brick-and-mortar business has standing under the Unruh Act. Under California law, Gilbert's motivation in visiting the 7-Eleven store in order to file suit was irrelevant to his ability to recover under the Unruh Act. The panel rejected 7-Eleven's argument that Gilbert lacked standing because he lacked a bona fide intent to be a customer.

The panel remanded to the district court to address any issues raised by the substitution of Gilbert's successors during the pendency of the appeal.

## COUNSEL

Tanya E. Moore (argued), Moore Law Firm PC, San Jose, California, for Plaintiffs-Appellees.

Michael S. Orr (argued) and Julie R. Trotter, Call & Jensen APC, Newport Beach, California, for Defendants-Appellees.

**OPINION**

SUNG, Circuit Judge:

Darren Gilbert lost his lower left leg and two right-foot toes to amputation, and he used a prosthetic leg and wheelchair for mobility. Gilbert sued 7-Eleven, Inc., under the Americans with Disabilities Act of 1990 (ADA) and California's Unruh Civil Rights Act (Unruh Act) after he personally encountered physical barriers to access when purchasing items at one of its stores. Following a bench trial, the district court ruled for Gilbert solely on the Unruh Act claim and awarded him $4,000 in statutory damages. For the reasons below, we affirm and remand.[1]

## I.    BACKGROUND

In August 2021, Gilbert drove his wheelchair-accessible van to a 7-Eleven convenience store in Rio Linda, California.[2] During this visit, the van-accessible parking space was occupied, so Gilbert parked in an adjacent regular parking space. Using his prosthetic leg, Gilbert walked behind the vehicle parked in the van-accessible space and up the sidewalk curb ramp from the stall access aisle to the sidewalk in front of the store. Because of his balance issues, Gilbert had some trouble walking up the sidewalk curb ramp, which had an "excessive and uneven slope." He was also "tired because of the 'energy' he had to expend to get into

---

[1] After Gilbert's death in July 2024, his successors in interest were substituted as the relevant parties on appeal. We remand to the district court to address any issues raised by the substitution.

[2] We summarize the district court's factual findings, which are undisputed on appeal.

the store." Once inside, Gilbert purchased items from the store.

Gilbert sued 7-Eleven under the ADA and Unruh Act two months later.[3] In relevant part, he asserted that 7-Eleven discriminated against him in violation of the ADA by failing to remove architectural barriers where such removal was readily achievable, and by denying him "full and equal enjoyment" of its store based on his disability. Gilbert sought injunctive relief under the ADA to remove these barriers. He also alleged that this ADA violation violated the Unruh Act, under which he sought statutory damages. After Gilbert filed this lawsuit, 7-Eleven remodeled the parking lot and entryway. As a result, the store now has an ADA-compliant van-accessible parking stall, access aisle, curb ramp, and entry walkway.

The district court held a two-day bench trial and concluded that "[d]uring his visits to the [s]tore, Gilbert personally encountered a lack of accessible route of travel from the designated accessible parking to the [s]tore entrance" because of several different violations of the ADA Accessibility Guidelines. The district court further concluded that although 7-Eleven's voluntary removal of the challenged barriers mooted Gilbert's claim for injunctive relief under the ADA, Gilbert "established that 7-Eleven violated the ADA with regard to the route of travel from the designated accessible parking to the [s]tore." Because a violation of the ADA constitutes a violation of the Unruh Act, *see* Cal. Civ. Code § 51(f), the district court awarded

---

[3] Gilbert also asserted a violation of California's Health and Safety Code, but the district court ruled for 7-Eleven on that claim. Because Gilbert does not appeal that ruling, we do not discuss it.

Gilbert $4,000 in statutory damages, *see* Cal. Civ. Code §§ 52(a), 55.56. 7-Eleven timely appealed.

## II.    DISCUSSION

After a bench trial, we review a district court's factual findings for clear error and its legal conclusions de novo. *See Langer v. Kiser*, 57 F.4th 1085, 1100 (9th Cir. 2023). "A district court's interpretation, construction, and application of the ADA" present a question of law that is reviewed de novo. *Id.*

### A.  ADA Violation

California's Unruh Act generally prohibits the denial of "the full and equal accommodations, advantages, facilities, privileges, or services in [any] business establishment[]" based on "disability" (among other enumerated grounds). Cal. Civ. Code § 51(b). The Unruh Act also provides that "[a] violation of the right of any individual under the federal Americans with Disabilities Act of 1990 . . . shall also constitute a violation of this section." *Id*. § 51(f). "Under the plain language of California Civil Code § 51(f), a violation of the ADA is automatically, without more, a violation of the Unruh Act." *Arroyo v. Rosas*, 19 F.4th 1202, 1214 (9th Cir. 2021); *see Munson v. Del Taco, Inc.*, 208 P.3d 623, 630 (Cal. 2009). 7-Eleven argues that Gilbert failed to establish a violation of the ADA—and thus, failed to establish a violation of the Unruh Act—because he did not show that barrier removal was "readily achievable," and he did not show that each challenged barrier impacted his ability to ambulate with a prosthetic leg. We address each argument in turn.

### *1. "Readily Achievable"*

Title III of the ADA requires removal of an architectural barrier "where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). In *Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030 (9th Cir. 2020), we adopted a burden-shifting framework for evaluating barrier removal claims. *See id.* at 1040. The plaintiff bears the initial burden of "articulat[ing] a plausible proposal for barrier removal, the costs of which, facially, do not clearly exceed its benefits." *Id.* at 1038 (quoting *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 373 (2d Cir. 2008)). But the defendant bears the "ultimate burden of persuasion," that is, of proving that "barrier removal is not readily achievable." *Id.* at 1040.

The district court concluded that 7-Eleven's voluntary removal of the challenged barriers established that removal was "readily achievable" under the ADA. On appeal, 7-Eleven argues that this was error because Gilbert did not present any evidence to satisfy his initial burden of showing that the costs of barrier removal do not outweigh its benefits. We disagree.

7-Eleven is correct that Gilbert did not present any evidence to demonstrate that barrier removal was readily achievable. But 7-Eleven concedes that it voluntarily altered its premises to comply with the ADA after Gilbert filed this action. And it is undisputed that 7-Eleven failed to present any competing evidence to meet its burden of persuasion. *See Snapp v. United Transp. Union*, 889 F.3d 1088, 1102 (9th Cir. 2018) ("burden-shifting frameworks . . . are merely analytical tools for focusing arguments" and do not lessen or shift "the ultimate burden of proof (the burden of persuasion)" at trial). Because 7-Eleven's voluntary remodeling demonstrates that barrier removal was readily

achievable, nothing further was required of Gilbert. Under these circumstances, it does not matter that Gilbert did not provide evidence to satisfy his initial burden. We do not apply the burden-shifting framework formalistically, as 7-Eleven suggests. *See, e.g.*, *Lopez*, 974 F.3d at 1038 (declining to require plaintiff to provide "precise cost estimates" or "specific design[s]" (quoting *Colo. Cross Disability Coal. v. Hermanson Fam. Ltd. P'ship I*, 264 F.3d 999, 1009 (10th Cir. 2001))).

Accordingly, we agree with the district court that barrier removal was readily achievable, and we reject 7-Eleven's argument that Gilbert failed to satisfy his burden.

## 2. *Barriers to Access*

To assert an ADA violation, a plaintiff must show they encountered an accessibility barrier that "affects [their] full and equal enjoyment of the facility on account of [their] particular disability." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 947 (9th Cir. 2011) (en banc) (quoting 42 U.S.C. § 12182(a)). Because the ADA Accessibility Guidelines outline the "technical standards required for 'full and equal enjoyment,' if a barrier violating these standards relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA." *Id.*

The district court concluded that Gilbert "personally encountered a lack of accessible route of travel from the designated accessible parking to the [s]tore" because the location of the van-accessible parking space, the slope of the curb ramp, and the depth of the ramp's top landing violated the applicable ADA Accessibility Guidelines. On appeal, 7-Eleven does not dispute that Gilbert personally encountered these barriers. 7-Eleven instead contends that Gilbert was

further required to prove that his experience at the store while ambulating with a prosthetic leg was "different" than that of "any other able-bodied person" in order to demonstrate that such barriers related to his particular disability.

Under our precedent, however, no such evidentiary burden exists. We have made clear that where a "barrier is related to [a] particular plaintiff's disability, . . . an encounter with the barrier necessarily injures the plaintiff by depriving him of full and equal enjoyment of the facility." *Id.* at 947 n.4. Along these lines, we have explained that a plaintiff who uses a wheelchair for mobility can challenge any "barrier[] that might reasonably affect a wheelchair user's full enjoyment of the store." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1044 n.7 (9th Cir. 2008). Likewise, a plaintiff who is blind may challenge any barrier that could injure a blind person. *See Chapman*, 631 F.3d at 947 n.4; *accord Steger v. Franco, Inc.*, 228 F.3d 889, 893–94 (8th Cir. 2000).

Because the record plainly shows that Gilbert personally encountered barriers that relate to his disability as a mobility-impaired individual who uses a prosthetic leg and wheelchair to ambulate, we agree with the district court that Gilbert properly established an ADA violation.

## B. Unruh Act Violation

We next consider 7-Eleven's argument that, even if Gilbert established an ADA violation, he lacked standing to bring an Unruh Act claim. Under California law, a plaintiff must have "standing" to assert a statutory violation.[4] "In

---

[4] The term "standing" means different things in different contexts. To remain consistent with the usage of California courts, we use the term "standing" as a shorthand for whether the plaintiff has adequately alleged

general terms, in order to have standing, the plaintiff must be able to allege injury—that is, some invasion of the plaintiff's legally protected interests." *Angelucci v. Century Supper Club*, 158 P.3d 718, 726–27 (Cal. 2007) (internal quotation marks omitted). Whether a plaintiff has suffered injury under a given statute, in turn, may vary depending on "the intent of the Legislature and the purpose of the enactment." *Id.* at 727.

The Unruh Act was designed to "create and preserve a nondiscriminatory environment in California business establishments by banishing or eradicating arbitrary, invidious discrimination." *Id.* at 721 (internal quotation marks omitted). To carry out this "overarching goal of deterring discriminatory practices by businesses," California courts construe the Unruh Act liberally. *White v. Square, Inc.*, 446 P.3d 276, 279 (Cal. 2019). For that same reason, "[s]tanding under the Unruh . . . Act is broad." *Osborne v. Yasmeh*, 205 Cal. Rptr. 3d 656, 663 (Ct. App. 2016). A plaintiff suffers injury—and therefore has standing—under the Unruh Act if he is "the victim of [a] defendant's discriminatory act." *Angelucci*, 158 P.3d at 727.

California courts have long held that an individual who personally encounters an ADA violation while transacting with a brick-and-mortar business has standing to bring an Unruh Act claim. *See White*, 446 P.3d at 279 ("Our cases . . . involv[ing] brick-and-mortar establishments . . . make clear

---

injury under the Unruh Act. This discussion of statutory standing under California law, however, should not be confused with constitutional standing under Article III. *See, e.g.*, *Weatherford v. City of San Rafael*, 395 P.3d 274, 278 (Cal. 2017) (explaining that the statutory standing inquiry concerning a particular state statute "differs somewhat from the standing analysis employed in the federal courts" with regard to Article III).

that a plaintiff who has transacted with a defendant and who has been subject to discrimination has standing under the Act."); *see also Midpeninsula Citizens for Fair Hous. v. Westwood Invs.*, 271 Cal. Rptr. 99, 102 (Ct. App. 1990) (standing under the Unruh Act encompasses "individuals actually denied full and equal treatment by a business establishment").

As explained above, the district court found, and 7-Eleven does not dispute on appeal, that Gilbert personally encountered a construction-related ADA violation while purchasing items from 7-Eleven's store. That was all that Gilbert needed to establish standing under the Unruh Act. 7-Eleven raises two related arguments to resist this straightforward conclusion, but both are unavailing.

### 1. *Motivation*

The district court found—and Gilbert did not dispute—that he filed approximately 70 lawsuits under the ADA, and his "primary motivation in visiting the [s]tore was to obtain a settlement or damages from 7-Eleven." 7-Eleven argues that, because Gilbert's purchase was "pre-textual," he lacks standing under the Unruh Act. But nothing in the Unruh Act nor any case interpreting it bars a claim by a plaintiff who can show injury—e.g., that they encountered alleged discrimination when they transacted with the defendant business—just because they were motivated by a desire to initiate litigation.

Moreover, the California Supreme Court has made clear that a plaintiff's motivation is irrelevant to his ability to recover under the Unruh Act. In *Angelucci*, the plaintiffs alleged that they "patronized the [defendant's] club on several occasions . . . and were charged an admission fee higher than that charged to women . . . because they are

men." 158 P.3d at 719–20. The defendant asserted that the plaintiffs did not suffer injury under the Unruh Act because, among other reasons, "Angelucci and the other men involved in the present case are professional plaintiffs who 'shake down' business entities on the basis of assertedly technical violations . . . unmotivated by any desire to eliminate discrimination or to redress any actual injury." *Id.* at 728. The California Supreme Court soundly rejected this argument, explaining that the plaintiffs had standing to bring an Unruh Act claim because they were "subjected to, and paid, [the] defendant's gender-based price differential." *Id.* at 727.

The California Supreme Court further explained: "Although we share to some degree the concerns . . . regarding the potential for abusive litigation being brought under the Act, these concerns do not supply a justification for our inserting additional elements of proof into the cause of action defined by the statute." *Id.* at 729. Rather, "[i]t is for the Legislature (or the People through the initiative process) to determine whether to alter the statutory elements of proof to afford business establishments protection against abusive private legal actions and settlement tactics." *Id.* "It is for the Legislature, too, to consider whether limitations on the current statutory private cause of action might unduly weaken enforcement of the Act or place unwarranted barriers in the way of those persons who suffer discrimination and whose interests were intended to be served by the Act." *Id.* The California Supreme Court reiterated these statements in *White*, citing *Angelucci* to reject a "similar argument concerning abusive litigation, boundless statutory damages, and extortionate settlements." 446 P.3d at 283.

Notwithstanding these decisions, the California Legislature has not amended the Unruh Act to make a plaintiff's motivation relevant to his standing to pursue a claim, and "we are bound to interpret the Unruh Civil Rights Act in accordance with the legislative intent." *Munson*, 208 P.3d at 633.[5] We agree with the district court that Gilbert's motivation in initiating litigation has no bearing on his standing under the Unruh Act.

## 2. *Bona Fide Intent*

7-Eleven also argues that to have standing under the Unruh Act, a plaintiff must have a "bona fide intent to be a customer." And 7-Eleven contends that the district court's finding that Gilbert's "sole motivation for visiting the [s]tore was for the purpose of litigation and his purchase was to further his litigation efforts" necessarily means that Gilbert lacked "bona fide intent." 7-Eleven's argument fails for several reasons.

*First*, we disagree with 7-Eleven's assertion that Gilbert's litigation motive necessarily means he lacked bona fide intent to purchase an item from 7-Eleven. Motivation and intent are not synonymous. That Gilbert was motivated

---

[5] In 2012 and 2015, after *Angelucci* but before *White*, "the California Legislature enacted new provisions to address what it perceived to be abuse of the Unruh Act['s damages remedy for construction-related accessibility violations] by 'a very small number of plaintiffs' attorneys.'" *Rosas*, 19 F.4th at 1206 (quoting Act of Sept. 19, 2012, ch. 383, § 24, 2012 Cal. Stat. 3843, 3871). "The Legislature could have chosen to eliminate the damages remedy in whole or in part, but it instead imposed a set of special procedural limitations designed to balance its objectives of allowing monetary relief, avoiding undue burdens on businesses, and realigning undesirable incentives for plaintiffs." *Id.* at 1213. None of those limitations make the plaintiff's litigation motive relevant to their standing to bring such claims.

by a desire to initiate litigation does not undermine the fact that he purchased items from 7-Eleven's store. And so, even if the Unruh Act did impose a bona fide intent requirement under these circumstances, Gilbert's litigation-related motivation would not negate his intent to use (or actual use of) 7-Eleven's services.

*Second*, 7-Eleven incorrectly contends that a showing of bona fide intent to use a defendant's services is a standing requirement for *all* Unruh Act claims under the California Supreme Court's decision in *White v. Square, Inc.*, 446 P.3d 276. As we explain below, the California Supreme Court in *White* never stated, much less implied, that bona fide intent is a requirement to establish standing for *all* Unruh Act claims. Rather, the Supreme Court made clear that it was adopting a fact- and claim-specific standing rule that does not apply here.

The plaintiff in *White* was a bankruptcy attorney who claimed that an electronic payments processor's service agreement, which required users to certify they would not accept payments in connection with bankruptcy attorneys, discriminated against bankruptcy attorneys in violation of § 51(b) of the Unruh Act. 446 P.3d at 278–79. White alleged that he visited the website of the defendant's online business intending to use its services, encountered terms and conditions that allegedly denied him full and equal access, and then left the website without using the services. *See id.* at 278. Unlike Gilbert, White did not complete a transaction with the defendant's business. And, unlike Gilbert, White did not allege a violation of § 51(f) based on a construction-related accessibility violation of the ADA. The defendant argued that White lacked standing because he neither signed up for its services nor was actually subject to its terms and

conditions of service and "therefore suffered no actual or personal injury from any alleged discrimination." *Id.* at 282.

Because White's claims were litigated in federal court, we certified the following question to the California Supreme Court:

> Does a plaintiff have standing to bring a claim under the Unruh Civil Rights Act when the plaintiff visits a business's website with the intent of using its services, encounters terms and conditions that allegedly deny the plaintiff full and equal access to its services, and then leaves the website without entering into an agreement with the service provider?

*Id.* at 277.

In explaining its decision, the California Supreme Court reframed the issue presented as follows:

> Our cases addressing related issues under the Unruh Civil Rights Act have involved brick-and-mortar establishments, not online businesses, and those cases make clear that a plaintiff who has transacted with a defendant and who has been subject to discrimination has standing under the Act. The question here is whether standing under the Act extends to a plaintiff who intends to transact, but has not yet transacted, with an online business.

*Id.* at 279 (citation omitted).

Thus, both this court and the California Supreme Court defined the standing question presented by referring to at

least two factual circumstances: (1) the defendant was an online business, not a brick-and-mortar store, and (2) the plaintiff did not actually transact with the online business. And, when the California Supreme Court answered the standing question presented, it cabined its holding by referencing those two factual circumstances:

> The answer is yes. When a plaintiff has visited a business's website with intent to use its services and alleges that the business's terms and conditions exclude him or her from full and equal access to its services, the plaintiff need not enter into an agreement with the business to establish standing under the Unruh Civil Rights Act.

*Id.* at 277.

The California Supreme Court's analysis in *White* also shows that the standing rule it adopted is claim specific. After the Court explained that "[s]tanding rules for statutes must be viewed in light of the intent of the Legislature and the purpose of the enactment," the Court specifically discussed only § 51(b) and the enforcement provisions related to that subdivision. *See id.* at 278–79. Likewise, when deciding the standing question presented, the Court considered only cases in which the plaintiffs brought claims alleging violations of § 51(b), namely *Koire v. Metro Car Wash*, 707 P.2d 195, 195–97 (Cal. 1985), and *Angelucci*, 159 P.3d at 719–23, 726–27. *See White*, 446 P.3d at 279–80. The Court never discussed cases involving derivative ADA claims under § 51(f) or construction-related accessibility claims. Nor did the Court state that it was adopting a broad rule applicable to all Unruh Act claims, regardless of the

factual circumstances or the claim presented. Accordingly, we conclude that the California Supreme Court did not, as 7-Eleven contends, create a "bona fide intent" standing requirement that applies to all Unruh Act claims.**[6]**

*Third*, to the extent 7-Eleven contends that we should extend the standing rule adopted in *White* to the circumstances of this case, we decline that invitation. As noted, *White* adopted a fact- and claim-specific rule: "an individual bringing an Unruh Civil Rights Act claim against an online business must allege, for purposes of standing, that he or she visited the business's website, encountered discriminatory terms, and intended to make use of the business's services[,] . . . with no further requirement that the person enter into an agreement or transaction with the business." *Id.* at 283–84. Because the California Supreme Court has not yet addressed whether that standing rule should be extended to other types of Unruh Act claims, we must "predict how the state high court would resolve" that question, including by applying state principles of statutory interpretation. *Slidewaters LLC v. Wash. State Dep't of Lab. & Indus.*, 4 F.4th 747, 755 (9th Cir. 2021) (internal quotation marks omitted).

---

[6] 7-Eleven also asserts that a Court of Appeal decision, *Thurston v. Omni Hotels Mgmt. Corp.*, 284 Cal. Rptr. 3d 341 (Ct. App. 2021), shows that California courts have interpreted *White* to require all plaintiffs to prove bona fide intent for standing under the Unruh Act. We disagree. The factual circumstances in *Thurston* were essentially the same as those presented in *White*: the plaintiff visited a website but did not complete a transaction. *Id.* at 343–46. Additionally, the Court of Appeal concluded that the plaintiff "had standing to assert an Unruh Civil Rights Act claim against [the defendant]" even though a jury determined that the plaintiff visited the defendant's website without intent to complete a transaction. *Id.* at 349.

The California Supreme Court's reasoning in *White* makes clear that it would not require a plaintiff to show they had a bona fide intent to use the defendant's services where, as here, the plaintiff actually transacted with the defendant's business. The Court expressly reaffirmed "that a plaintiff who has transacted with a defendant and who has been subject to discrimination has standing under the Act." *White*, 446 P.3d at 279. The Court determined that White needed to show he intended to use the defendant's services to establish standing only because he merely visited the defendant's website and "neither paid a fee nor requested equal treatment before leaving the business establishment." *Id.* at 280–83. Further, in rejecting the defendant's argument that White lacked standing because he did not actually transact with the defendant's business, the Court explained that "visiting a website with intent to use its services is, for purposes of standing, equivalent to presenting oneself for services at a brick-and-mortar store." *Id.* at 277–78. Thus, in the standing rule adopted by the Court, the intent element is a *substitute* for either completing a transaction or presenting oneself for services at a brick-and-mortar store—not an *additional* requirement.

We are also confident that the California Supreme Court would not extend the standing rule adopted in *White* to a plaintiff who, like Gilbert, brings a construction-related accessibility claim for statutory damages and shows that they personally encountered a construction-related violation at a place of public accommodation and experienced difficulty due to that violation.

Requiring such a plaintiff to *also* show they visited the business "with intent to use its services" to establish standing would be manifestly inconsistent with the plain text of the Unruh Act, Cal. Civ. Code § 55.56(c). When a plaintiff

brings a construction-related accessibility claim and seeks the statutory minimum damages award under § 52(a), § 55.56 specifies the showing that the plaintiff must make: The plaintiff may recover statutory damages "if a violation or violations of one or more construction-related accessibility standards denied the plaintiff full and equal access to the place of public accommodation on a particular occasion." Cal. Civ. Code § 55.56(a). A "plaintiff is denied full and equal access" in two circumstances under the statute: "if the plaintiff personally encountered the violation on a particular occasion, *or* the plaintiff was deterred from accessing a place of public accommodation on a particular occasion." *Id.* § 55.56(b) (emphasis added).

If the plaintiff personally encountered the violation, the Unruh Act requires the plaintiff to show that they "experienced difficulty, discomfort, or embarrassment because of the violation," but it does not require the plaintiff to make any showing of intent. *Id.* § 55.56(c). By contrast, if the plaintiff seeks statutory damages because they were "deterred from accessing" the place of public accommodation, the Unruh Act expressly requires the plaintiff to show they "had actual knowledge of a violation or violations that prevented or reasonably dissuaded the plaintiff from accessing a place of public accommodation that *the plaintiff intended to use on a particular occasion*," and that the violation "would have actually denied the plaintiff full and equal access if the plaintiff had accessed the place of public accommodation." *Id.* § 55.56(d)(1)–(2) (emphasis added). Thus, if the plaintiff personally encountered the construction-related accessibility violation, they need to show they were affected by the violation, but they do not need to show they intended to use the

defendant's services on a particular occasion. *See Rosas*, 19 F.4th at 1214 (discussing and applying § 55.56).[7]

Because the state legislature plainly chose not to include an intent requirement in § 55.56(c), courts may not add such a requirement without contravening the broad deterrent and remedial purposes of the Unruh Act and California's separation-of-power principles, which mandate that courts refrain from creating extra-statutory barriers to statutory remedies. *See Angelucci*, 158 P.3d at 729; *see also White*, 446 P.3d at 282 (approving Court of Appeal's conclusion in *Osborne*, 205 Cal. Rptr. 3d at 668–69, that "[t]o hold that plaintiffs . . . lacked standing" because they did not "tender the purchase price for a business's services or products" "would contradict both the language and the intent of the Unruh Civil Rights Act").

Further, it is unnecessary to add a bona fide intent requirement to § 55.56(c) to fulfill the purpose of standing requirements. As *White* explained, courts must impose standing requirements that are sufficient to ensure that the plaintiff has a "concrete and actual interest that is not merely hypothetical or conjectural." 446 P.3d at 283. *See also*

---

[7] Our decision in *Rosas* supports our conclusion here that § 55.56(d) requires a showing of intent-to-use for construction-related statutory damages claims but § 55.56(c) does not. *See Rosas*, 19 F.4th at 1214–15. There, we concluded that the plaintiff was entitled to statutory damages under § 55.56(c) "based on his actual encounter with the store's barriers" and his undisputed showing that he suffered "difficulty, discomfort[,] inconvenience, embarrassment, anxiety and frustration"— "without more." *Id.* at 1215 (alteration in original). But the plaintiff in *Rosas* was not "entitled to a second award of statutory damages [under § 55.56(d)] based on his claim that he was also deterred from visiting the store in the future" because he did not show that he intended to use the store on a particular occasion, as § 55.56(d) expressly requires. *Id.*

*Angelucci*, 158 P.3d at 727 (explaining plaintiffs had standing because they "adequately alleged they had suffered an 'invasion of legally protected interests' sufficient to afford them an interest in pursuing their action vigorously" (citation omitted)). At the same time, however, courts may not impose standing requirements that undermine the Unruh Act's "broad preventive and remedial purposes." *White*, 446 P.3d at 279.

In *White*, the Court balanced these countervailing principles and concluded that requiring a plaintiff "bringing an Unruh Civil Rights Act claim against an online business [to] allege, for purposes of standing, that he or she visited the business's website, encountered discriminatory terms, and intended to make use of the business's services" was "sufficient to limit standing under the Unruh Civil Rights Act to persons with a concrete and actual interest that is not merely hypothetical or conjectural"—even if the plaintiff neither transacted with the business nor was subject to the allegedly discriminatory policy. *Id.* at 283. The Court rejected the defendant's more onerous proposed rule—under which the plaintiff would need to show they transacted with the defendant's business—because that rule "would not adequately serve the Act's broad purpose of eradicating discriminatory business practices." *Id.*

Considering how the California Supreme Court balanced the purpose of standing requirements with the deterrent and remedial purposes reflected in the Unruh Act, we are confident that it would not require a plaintiff who satisfies § 55.56(c)'s requirements to *also* show they had a bona fide intent to use the defendant's services. By requiring a plaintiff who personally encountered a construction-related accessibility violation to show they experienced some difficulty, discomfort, or embarrassment as a result,

§ 55.56(c) adequately ensures the plaintiff was personally injured by the violation and thus has a concrete interest in pursuing their claim. In such cases, the Court does not need to impose an intent requirement to ensure the plaintiff's interest in remedying the construction-related accessibility violation is "not merely hypothetical or conjectural." And, as explained, imposing an extra-statutory intent requirement would contradict both the language and purposes of the Unruh Act.[8]

*Finally*, 7-Eleven asserts that *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165 (9th Cir. 2010), supports its contention that Gilbert was required to show bona fide intent to have standing to bring his Unruh Act claim.[9] Again, we disagree. Antoninetti, who used a wheelchair, visited two of Chipotle's restaurants a total of eight times, five times as a customer and three times to gather evidence or in connection with discovery proceedings. 643 F.3d at 1169.

---

[8] 7-Eleven's reliance on *Arroyo v. Golbahar*, No. 22-55182, 2023 WL 2064588 (9th Cir. Feb. 17, 2023) (unpublished), is also unavailing. The plaintiff there sued a business whose services he had never used. *See id.* at *2–3. By contrast, Gilbert visited the 7-Eleven store and purchased items. Under California caselaw, nothing more is required. *See White*, 446 P.3d at 279 ("[A] plaintiff who has transacted with a defendant and who has been subject to discrimination has standing under the [Unruh] Act."). To the extent *Golbahar* suggests that *White* and *Thurston* established a broad rule requiring all plaintiffs to show bona fide intent to establish standing for all Unruh Act claims, regardless of the factual circumstances, we disagree for the reasons stated above, and as an unpublished decision, *Golbahar* does not bind this panel. *See* 9th Cir. R. 36-3(a).

[9] Although *Antoninetti* addressed claims brought under the California Disabled Persons Act, not the Unruh Act, 643 F.3d at 1177, both acts permit state law claims premised on violations of the ADA, *see Jankey v. Lee*, 290 P.3d 187, 190–91 (Cal. 2012).

We held that Chipotle violated the ADA because, in each restaurant, a "wall conceal[ed] the food preparation counter from wheelchair-bound customers and thus prevent[ed] those customers from having the experience of non-disabled customers of fully participating in the selection and preparation of their order" at the counter. *Id.* at 1173. Chipotle thus violated the ADA each time it prevented Antoninetti from enjoying the "Chipotle experience." *Id.* at 1177. Antoninetti argued that he was entitled to damages under California law based on those ADA violations. *Id.* But because those ADA violations occurred only when Antoninetti "was unable to enjoy the 'Chipotle experience,'" they also "necessarily occurred only when he visited the restaurants to purchase food and sat in line in his wheelchair." *Id.* "On those visits when he was not seeking to purchase food or to have the 'Chipotle experience,' Antoninetti [could ]not recover money damages under the California Act" because no ADA violation occurred. *Id.* Thus, in *Antoninetti*, we held that intent was relevant only for visits in which the plaintiff did not transact with the defendant, and only as a matter of the ADA. Contrary to 7-Eleven's argument, we did not hold that intent was required for standing under California law. *Id.*

\* \* \*

For all these reasons, we affirm the district court's award of statutory damages for Gilbert's claim that 7-Eleven violated § 51(f) of the Unruh Act. We remand to the district court to address any issues raised by the substitution of Gilbert's successors during the pendency of this appeal.

**AFFIRMED AND REMANDED.**

7-Eleven shall pay costs on appeal.